332 So.2d 475 (1976)
STATE of Louisiana
v.
Alvin Paul HILL.
No. 57300.
Supreme Court of Louisiana.
May 17, 1976.
*476 Robert J. Ziblich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Alvin Paul Hill was charged by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. On March 18, 1975, defendant was tried and the jury returned a responsive verdict of guilty of attempted aggravated rape. Prior to sentencing, the district attorney filed a bill of information, pursuant to La.R.S. 15:529.1, charging defendant as a multiple offender and setting forth three previous felony convictions. After a hearing, defendant was sentenced as a second offender to forty years imprisonment. He now appeals, relying on four assignments of error with respect to the conviction and three assignments of error relative to the sentence.
On October 28, 1974, a woman attempting to exit her car in the parking lot of the Gentilly Woods Shopping Center in New Orleans was accosted by a man with a knife and forced back into her car. After being forced to drive him around for a while, she was ordered to stop on a street behind the Riget Theatre on Franklin Avenue in Orleans Parish, where she was raped. She was then forced to drive to a place beneath and I10 "bridge" near Apache Street in Orleans Parish, where she was again raped. The assailant then instructed her to take him back to his car in the parking lot of the shopping center. From a description of the assailant and of his car given to the police by the victim, defendant was picked up and arrested a short time later.

ASSIGNMENT OF ERROR NO. 1.
By this assignment of error, defendant argues that the trial court erred when it allowed Officer Edgar Dunn, a criminalist *477 with the New Orleans Police Department, to testify as an expert in the examination of seminal fluid and the comparison of hair samples.
Officer Dunn testified that he has a Bachelor of Science degree in biology from the University of Mississippi and one semester of graduate work in Chemistry at the same university; that he is a member of the Forensic Scientists Society and the Louisiana Association of Forensic Scientists; and that he has previously testified as an expert in the examination of seminal fluid and the comparison of hair samples in Section I of the Criminal District Court for the Parish of Orleans, and as an expert in seminal fluid in Sections D and J of that court. He had at the time of trial worked as a criminalist for the New Orleans Police Department for four and one half years. Following testimony by Officer Dunn as to the types of tests he performed, the trial judge ruled that he was qualified to testify as an expert witness. Defense counsel objected to the ruling.
The basis of defendant's argument is that during the predicate to qualify him as an expert, Officer Dunn testified that "[a]ny stain on pants isn't necessarily seminal fluid. If it does fluoresce, it has a high possibility of being seminal fluid." Defense counsel contends that this statement demonstrates that the examination of seminal fluid is too inexact and that expert testimony in that area is, therefore, improper. No argument was raised questioning Officer Dunn's qualification as an expert in the comparison of hair samples.
La.R.S. 15:464 provides that "[o]n questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such knowledge are admissible as expert testimony." Prior to testimony as an expert, however, a witness must be qualified as such by the trial court. La.R.S. 15:466 provides as follows:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
It is well established that the trial judge has wide discretion in this area and his ruling will not be disturbed on appeal in the absence of manifest error. State v. Rogers, 324 So.2d 358 (La.1975); State v. Thorson, 302 So.2d 578 (La.1974); State v. Vassel, 285 So.2d 221 (La.1973). Under the facts of this case, the trial court clearly did not err in allowing Officer Dunn to testify as an expert witness. There are few areas of scientific expertise subject to absolute certainty. Thus while Officer Dunn's testimony that the test administered determines only whether there is a high possibility that a stain is seminal fluid is not conclusive proof of the matter at issue, this limitation in no way affects his qualification as an expert witness.
This assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 2, 4 and 5.
By these assignments of error, defendant argues that the trial court erred when it allowed the testimony of Patricia Daniels with respect to the results of laboratory tests she had made to go to the jury and when it permitted the state to refer to a coroner's physical examination report by Dr. George Bailey and to the laboratory report by Ms. Daniels, when laying the predicate for this testimony.
At trial, out of the presence of the jury, Ms. Daniels, a medical technologist employed by the Orleans Parish Coroner's Office, testified that on October 29, 1974, she examined a vaginal swab and a vaginal smear taken from a rape victim the previous evening. According to Ms. Daniels' testimony, she found the specimens in a vial in the office refrigerator, the usual procedure *478 when she is not present at the examination. The label on the vial indicated the name of the victim; her race; her age; the date of the examination, i.e., October 28, 1974; and the name of the doctor who had performed the examination, Dr. George Bailey. She further stated that following her analysis of the specimens in question she discarded them, as was her general policy, and wrote a report on her findings. This report was then filed in the coroner's office together with Dr. Bailey's examination report. Over objection of defense counsel, the trial court ruled that a sufficient predicate had been laid to allow the testimony to go to the jury. The foundation was then laid in the presence of the jury and, again over the objection of defense counsel, Ms. Daniels read her report, which stated in effect that a vaginal swab, ostensibly taken from the victim on October 28, 1974, tested positive for seminal fluid, and that a vaginal smear taken from the victim at the same time revealed the presence of spermatazoa.
The bases of defense counsel's objection are that the trial court allowed Ms. Daniels to read her report to the jury, when Dr. Bailey who had actually conducted the examination of the victim did not testify at trial[1] and when Ms. Daniels had neither taken the specimens from the victim nor been present during the examination; that Dr. Bailey's report referred only to a vaginal smear, while Ms. Daniels' report indicated that she tested both a vaginal swab and smear; and finally, that the specimens themselves should have been introduced at trial.
There is no merit to these arguments. The victim of the crime testified that she had been examined in the coroner's office by Dr. Bailey and that he had taken "something" from her. Ms. Daniels, the medical technologist, testified that the following morning she found a vial in the refrigerator with a label indicating, inter alia, the victim's name and the name of the examining physician, Dr. Bailey. In addition she testified that she was familiar with Dr. Bailey's signature, that he had signed the examination report on this victim, and that when she had tested the specimens and made her report, she filed both reports on the victim together, as is the usual procedure in the coroner's office.
Under the facts of this case, the state laid a sufficient foundation that the specimens were taken from the victim on the night of the rape and thus the testimony could properly go to the jury. It is not required that the evidence presented on the predicate establish beyond a reasonable doubt that the matter tested and reported was connected with the instant case. Rather, if the connexity can be shown by a preponderance of the evidence, the matter is appropriately submitted to the jury and the actual weight it is to be given is then a factual issue for jury determination. See State v. Wolfe, 321 So.2d 335 (La.1975); State v. Flood, 301 So.2d 637 (La.1974); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). Furthermore, the state's failure to preserve the specimens after testing by the technologist is not unreasonable.[2] The specimens remain testable for seminal fluid for only twenty-four to forty-eight hours and for spermatozoa for only twelve to twenty-four hours.
These assignments of error lack merit.
*479 ASSIGNMENTS OF ERROR NOS. 3, 4 and 6.
(Multiple offender hearing)
After defendant was convicted of attempted aggravated rape and prior to sentencing thereon, the district attorney filed a bill of information charging defendant as a fourth offender and requesting an enhancement of sentence pursuant to the provisions of La.R.S. 15:529.1. Following a hearing on this multiple offender bill, the trial judge found defendant to be a second offender and sentenced him to forty years imprisonment.[3] These assignments of error all relate to objections by defense counsel to the evidence introduced by the state against defendant at this proceeding.
Defense counsel argues that the evidence produced by the state was insufficient to prove defendant was a multiple offender due to inconsistencies in the documents introduced and due to the fact that the documents did not state the length of time defendant was imprisoned and the date of his discharge for the prior offenses.
The state's case against defendant at the multiple offender proceeding consisted of a certified copy of a document from the clerk's office, Criminal District Court, Parish of Orleans, indicating that an "Alvin Hill" pled guilty to a 1971 charge of theft of an automobile valued at $4,000.00 and was sentenced or two years in parish prison; a certified copy of a document from that same office indicating that an "Alvin Paul Hill" pled guilty to a 1972 charge of receiving stolen property valued at $4,200.00 and was sentenced to two years in parish prison; the arrest sheets in both of the above incidents which contained the fingerprints taken in connection with these arrests; and the fingerprints of defendant taken in court on the day of the multiple offender hearing.[4] A fingerprint expert testified for the state that the fingerprints in each of the two earlier felonies were the same as those of defendant. However, because of some inconsistencies and discrepancies with respect to the 1971 matter, the trial judge found defendant to be a second offender only, on the basis of the 1972 felony and the conviction which we are presently reviewing, and sentenced him accordingly.
The provisions of La.R.S. 15:529.1 D. instruct the trial judge "to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information." If a defendant, such as defendant in the instant case, is charged as a fourth offender, but the trial judge is satisfied as to proof of only one prior offense, it is appropriate to sentence him as a second offender. Lack of sufficient proof of one or more of the prior felonies set forth in the multiple offender bill of information does not require the entire bill to fall. Under the facts of this case, *480 we are satisfied, as was the trial court, that there was proof that defendant in the instant case was the same individual who pled guilty to receiving stolen property in 1972. The trial judge did not err in finding defendant to be a second offender and in sentencing him accordingly.
Defense counsel also argued in brief that defendant's second offender sentence was defective because the documents introduced did not specify the date of discharge from prison in connection with the prior offense.
La.R.S. 15:529.1F. provides as follows:
"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the finger prints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence on the trial of any person for a second and subsequent offense of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
While this subsection of the multiple offender law does set forth one means of proving that a defendant is an habitual offender, it is not the exclusive means of doing so. As previously noted, subsection D of the statute merely instructs the sentencing judge to inquire whether the defendant was previously convicted of the felony or felonies included in the multiple offender bill of information and to enhance the defendant's penalty as prescribed in subsection A if he finds that there was such a prior conviction or convictions. La.R.S. 15:529.1D. In addition, the judge must be satisfied that no more than five years has elapsed since the expiration of the maximum sentence of the previous felony conviction or convictions. La.R.S. 15:529.1C.[5]
In the instant case, records from the clerk's office, Criminal District Court, Parish of Orleans, established that on May 11, 1972, "Alvin Paul Hill" pled guilty to the felony of receiving stolen property valued at $4,200.00; that this offense had been committed on April 20, 1972; and that he was sentenced to serve two years in parish prison. Fingerprint identification established that this earlier felon and the present defendant were one and the same. While the state did not establish the date defendant was discharged from prison, such information would serve no useful purpose under the facts of this case. The state did set forth sufficient evidence that defendant had been previously convicted of a felony. In addition, because there was less than a five year period between the date of commission of the prior offense and the date of the offense which is the subject of the enhancement proceeding,[6] there could be no term of sentence imposed in connection with the earlier felony which could have elapsed more than five years before the date of the present criminal conduct. Under these facts, the sentencing *481 judge did not need to rely on a warden's or superintendent's certificate as set forth in La.R.S. 15:529.1F. in order to properly find that defendant was a second offender.
The instant case is distinguishable from State v. Curtis, 319 So.2d 434 (La.1975), where this Court noted that "La.R.S. 15:529.1, subd. F. sets forth the elements of proof necessary for a prima facie case against a defendant charged under the Habitual Offender Law." In that case the only evidence introduced against the defendant at the multiple offender hearing were bills of information and certified copies of minute entries which showed that one "Clarence Louis Curtis, Jr." had been convicted of prior felonies. We concluded that on the basis of this evidence the state had failed to prove that the defendant was the same person as the individual previously charged and convicted. Under those facts, where no prima facie evidence of prior convictions was otherwise established, it was appropriate to find that failure to introduce into evidence a warden's certificate pursuant to La.R.S. 15:529.1 caused the state's evidence to fall short of the requisite prima facie case. It was therefore appropriate in that instance to vacate the sentence. In the instant case, however, as set forth above, a prima facie case was established by means other than warden's certificate, including in particular fingerprint identification in connection with the prior and present felonies.
In addition to the foregoing an equally valid grounds for finding this argument of defendant non-meritorious is that defense counsel did not object on this grounds at the multiple offender hearing.
These assignments of error lack merit.
For the reasons assigned the conviction and sentence are affirmed.
NOTES
[1] According to Ms. Daniels' testimony, Dr. Bailey was in Boston undergoing surgery at the time of trial.
[2] The state in brief argues that defense counsel did not object at trial when the specimens in question were not introduced. While a formal objection was not made, defense counsel did refer to the failure to introduce the swab and the smear when objecting to the sufficiency of the predicate laid by the state. Since we conclude that this failure did not constitute error, we need not decide whether a proper objection was raised in the instant case.
[3] Under the provisions of La.R.S. 15:529.1A. (1), a defendant found to be a second offender can be sentenced to a "determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction." Since at the time of the commission of the crime, attempted aggravated rape was punishable by imprisonment "at hard labor for not more than twenty years," La.R.S. 14:27D. (1) (1970) and La.R.S. 14:42, the sentence imposed by the trial judge was within the statutory limits.
[4] The state attempted to prove a third prior offense but could not sufficiently establish the identity of the defendant in that case as being the same as this defendant. There were no fingerprints and the sentencing trial judge was unable to independently recall sentencing the defendant in relation to that conviction. Therefore, the trial court sustained defense counsel's objection to introduction of documents in connection with that alleged prior offense.
[5] La.R.S. 15:529.1 C. provides that the provisions of the Habitual Offender Law "shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence, or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted."
[6] The prior offense for receiving stolen property took place on April 20, 1972, while the date of the commission of present crime was October 28, 1974.