351 So.2d 448 (1977)
STATE of Louisiana
v.
Ferris GRAY.
No. 59176.
Supreme Court of Louisiana.
October 10, 1977.
Rehearing Denied November 11, 1977.
*452 Allen J. Tillery, A. Scott Tillery, Arabi, Gary J. Dragon, Chalmette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leander H. Perez, Jr., Dist. Atty., Gilbert V. Andry, III, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was convicted of aggravated rape on May 23, 1974 and subsequently sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. He took an appeal on June 24, 1974; the record was filed here January 19, 1977. Defendant relies on twenty-one arguments on assignments of error for reversal of his conviction.
On December 4, 1972 a nine year old girl attended a Girl Scout meeting at the St. Robert Bellarmine School in Arabi, Louisiana. Between 5:15 and 5:30 p. m. she left the meeting and got on her bike to ride to her home, some four or five blocks away. As she was leaving the school a man stopped her, ordered her off the bike, placed his hand over her mouth and forced her to walk to the rear of the schoolyard. There he raped her and then ran off. The girl then went home, told her parents what happened, and described her attacker. After riding around the neighborhood in search of the man with her father, the victim was taken to a police station where she described the man's physical characteristics, clothing and jewelry. The defendant was picked up soon thereafter.
Assignment of Error No. 1
Defendant contends that the trial court erred in denying a motion for a bill of particulars requesting the State to inform him of the "manner and means" by which the offense was committed and setting forth what subsection of R.S. 14:42 under which the State intended to prosecute.
Article 1, § 10 of the Louisiana Constitution of 1921, applicable at the time of the trial, granted the accused the right to ". . . be informed of the nature and cause of the accusation against him." C.Cr.P. 484 provided the procedural device, a motion for a bill of particulars, by which an accused may obtain that information. However, it is well settled that the device may not be used to discover the State's evidence or the details of the State's case. State v. Walker, 344 So.2d 990 (La.1977); State v. May, 339 So.2d 764 (La.1976); State v. Jenkins, 338 So.2d 276 (La.1976).
In the instant case, the defendant was informed by the grand jury indictment and the bill of information returned by the district attorney of the crime charged, the identity of the victim, and the place and time of the offense. In addition, at the hearing on the motion the assistant district attorney stated that the girl was under the age of twelve at the time of the rape and that he intended to prove that ground, if not others. At trial, this proved to be the *453 exclusive basis of the prosecution inasmuch as no evidence of threats or resistance was introduced, nor was there any evidence that the defendant used a dangerous weapon.
In view of the fact that the defendant was aware of the only ground actually urged by the prosecution, any error in refusing to grant the motion does not constitute reversible error. C.Cr.P. 921; State v. Mason, 305 So.2d 523 (La.1974).
Assignment of Error No. 2
Defendant contends that it was error for the trial court to refuse to suppress the evidence obtained in a police line-up and voice identification.
Several hours after the offense, the victim identified the defendant in a line-up with two other persons. Testimony at the motion to suppress hearing indicated that the two persons in the line-up with the defendant were approximately the same age as the defendant; that one was slightly taller and of lighter complexion than the defendant and that the other had long, dark hair. A second line-up was held three days later in which Jule Defourneaux, the caretaker of a church near the scene of the crime, identified the defendant as the man he saw in the church at approximately 5:20 to 5:30 p. m. the day of the offense. The same persons were used in the line-up and all were dressed identically.
The constitutionality of the identification depends on whether it was so unduly suggestive and conducive to mistaken identification as to deny the defendant due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Jackson, 337 So.2d 508 (La.1976); State v. Rudolph, 332 So.2d 806 (La.1976). It is not required that there be strict identity of characteristics among the members of a line-up, but rather only a sufficient resemblance to reasonably test the identification. State v. Anthony, 347 So.2d 483 (La.1977); State v. McSpaddin, 341 So.2d 868 (La.1977); State v. Hargrove, 330 So.2d 895 (La.1976).
While we do not have the benefit of photographs of the persons in the line-up, it does not appear from their description in the record that they did not possess sufficient resemblance to the defendant to test the identification.
The assignment is without merit.
Assignments of Error Nos. 3, 4, 6, 8, 24 and 34
Defendant raises issues of pre-trial discovery, inspection and independent examination of evidence through these assignments.
Assignment No. 3 deals with whether the defendant had a right to access to the results of scientific tests made upon the clothing of the defendant. With certain limited exceptions, there was no pre-trial discovery in criminal cases at the time of this trial. State v. Hodges, La., 349 So.2d 250 (decided June 20, 1977); State v. Jones, 332 So.2d 466 (La.1976); State v. Collins, 308 So.2d 263 (La.1975). The test results here requested do not fall within one of the exceptions, therefore the assignment is without merit.
Assignment No. 6 presents the question of whether the defendant had a right to discover the names and addresses of the witnesses who appeared before the grand jury. C.Cr.P. 434(A) provides:
"Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a *454 person under investigation or indicted, with the attorney general or the district attorney, or with the court."
The statute gave no "right of discovery" to defendant for the names of grand jury witnesses.
There is no merit in this assignment.
Defendant assigns as error in Assignments 4, 8 and 24 the denial of a motion for independent examination of the clothing taken from the victim and defendant soon after the crime. At trial, the State introduced those items and, through expert testimony, established that the victim's clothing was stained with blood and semen and that the defendant's pants and shirt showed a semen residue. The State's expert further testified that because of the mixing of the stains, he was unable to determine whether the semen found on the victim's clothing matched the defendant's secretion grouping.
Defendant argues that the denial of an independent examination forced him to accept the State's witness' conclusion that no secretion grouping could be done on the stains while his experts might be able to successfully determine the grouping and thus possibly exculpate the defendant.
Defendant's argument is not frivolous. While pre-trial discovery in Louisiana was[1] generally severely limited, those limitations may not be allowed to infringe upon the defendant's constitutional rights to due process of law or to offend principles of fundamental fairness. In State v. Woodruff, 281 So.2d 95 (La.1973), we held that the refusal of the trial court to order production of a gun for purposes of identification when that identification was crucial to the claim of self-defense constituted a denial of due process.
The Fifth Circuit Court of Appeals, in Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975), granted habeas corpus to a defendant whose conviction had been previously affirmed by this court, State v. Barnard, 287 So.2d 770 (La.1973), where the defendant was denied an opportunity to conduct an independent ballistics test on the weapon allegedly used in the offense charged. That court stated:
". . . Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion." 514 F.2d at 746.
See also State v. Roberts, 331 So.2d 11 (La.1976).
In the present case the defendant should have been granted the opportunity to examine and test the clothing in evidence. Had defendant's experts been allowed to test the semen stains on the victim's clothing, it is possible that they may have discovered that they did not match the defendant's secretion or blood groupingsa finding of crucial importance to the defense.
The error in refusing the motion, however, does not constitute reversible error. Although the trial judge denied the examination before and during the trial and also denied a motion for new trial based on those grounds, in ruling on the motion he indicated that a proper foundation had not been laid, presumably meaning there was no evidence in the record showing that an examination of the garments would result in exculpatory evidence. This part of the ruling begged the question, because defendant had been denied access to the garments, unless the trial judge meant that there was no evidence of a scientific nature in the record to demonstrate the possibility that certain tests and examinations might eliminate defendant as the producer of sperm on the victim's clothes.
Nevertheless, in spite of his past rulings, the trial judge clearly invited "examination and testimony of those garments which are now public property by anyone for the defense in order to lay the proper foundation for the presentment of the appeal." The trial judge must have had in mind the provisions of C.Cr.P. 851(3) and 854, allowing a *455 motion for new trial on grounds of newly discovered evidence within a year after verdict. No such motion was filed by the defense. We can only conclude that a conscious decision was made to rely on the error in the record rather than the evidence which might have been discovered. In such circumstances we can only conclude that the error was harmless.
Assignment No. 34 involves the trial court's denial of defendant's motion for a subpoena duces tecum to Sheriff John F. Rowley to produce certain police records in his possession. We cannot determine from the record before us what defendant sought, nor how he was prejudiced by the denial of the material sought. There is no merit in this assignment.
Assignment of Error No. 5
Defendant urges as error the trial court denial of his motion for separate trials of guilt and sanity. C.Cr.P. 651 provides in part that "the defenses available under a combined plea of `not guilty and not guilty by reason of insanity' shall be tried together." Defendant has not shown that application of this legislatively mandated procedure resulted in a denial of any constitutional or statutory rights. (The defense argument is that it is difficult to impress the jury when defendant says, in effect, "I didn't do it, and if I did, it was because I was insane."
The assignment is without merit.
Assignment of Error No. 7
Defendant assigns as error the trial court's refusal to quash the indictment on grounds that the grand jury venire was improperly constituted in that it did not represent a fair cross-section of the community. Testimony from the hearing on the motion indicates that the venire was selected by a random drawing from the parish list of registered voters and from a list of persons having water meters. Defendant contends that "individuals who reside in rental property and individuals who reside with their parents or relatives" are specifically excluded from the venire by the use of the water service lists.
Defendant's argument is without merit because it fails to consider the effect of the second venire sourceparish voter registration. Persons not considered because they did not have water service in their names may very well have been included in the voter registration lists. The defendant failed to demonstrate the systematic exclusion of a particular group from the venire and therefore the assignment is without merit. See State v. Daigle, 344 So.2d 1380 (La.1977); State v. Taylor, 347 So.2d 172 (La.1977); State v. Jones, 332 So.2d 461 (La.1976).
Assignments of Error Nos. 10, 12, 13, 14 and 15
Defendant through these assignments asserts as error the trial judge's refusal to excuse the following jurors for cause. Each of these jurors was excused by defendant's peremptory challenge and thus did not serve on the jury, but defendant is nevertheless allowed to raise the issue on appeal since he later exhausted his peremptory challenges. State v. Ballard, 337 So.2d 481 (La.1976).
Prospective juror Edwin Hahn was challenged by the defendant because he was acquainted with the prosecuting and defense attorneys and was in business with a relative of the prosecuting attorney. Walter J. Guillot was challenged because he was a social friend of the prosecuting attorney and Gary Nicosa was challenged because he was the nephew of a St. Bernard Parish deputy sheriff.
A trial judge is granted much discretion in determining the composition of the jury. The mere existence of personal acquaintances between a prospective juror and the trial participants does not, without more, demonstrate a lack of fitness to serve as a juror. In the present case all three of the prospective jurors stated on voir dire that the relationship involved would not prevent their impartial service on the jury. We cannot say that the failure to excuse these jurors was an abuse of the trial judge's *456 discretion. C.Cr.P. 797(3); State v. Dupuy, 319 So.2d 294 (La.1975); State v. Blanton, 312 So.2d 329 (La.1975); State v. James, 305 So.2d 514 (La.1974).
Prospective juror John R. Graf, Sr. was challenged because of the following opinion expressed on voir dire:
"MR. GRAF:
Well, if the child was that young, I don't think I could give a fair verdict on it."
Further questioning clarified Mr. Graf's statement:
"THE COURT:
The only thing I want to find out from you is just because the State made a charge against this man, you don't consider him to be guilty, do you?
A No, not yet."
and
"EXAMINATION BY MR. LIVAUDAIS:
Q And Mr. Graf, if you are selected as a juror, would you make your decision in this case solely and exclusively from the facts as they come from the sworn witnesses who take the stand in this case?
A Yes, sir."
The trial court's refusal to excuse for cause was not an abuse of discretion when, after further questioning, the court was satisfied that the juror could serve impartially.
The defendant's challenge to prospective juror George Vallee was based on the following testimony on voir dire:
"Q Well, the fact that you have heard the young girla Girl Scout was raped, does that give you any preconceived notion she was actually raped? Have you reached a conclusion from that that she was actually raped?
A No. I said if it happened the one that did it ought to get the death penalty. That is all."
The defendant contends that this opinion as to the severity of the crime indicated that Mr. Vallee could not serve free of prejudice. Again, no abuse of discretion is demonstrated when on further examination Mr. Vallee indicated that he had no preconceived opinion as to the guilt of the defendant or to the actual occurrence of a rape.
These assignments are without merit.
Assignment of Error No. 11
Defendant argues under this assignment that the trial court erred in refusing to allow questions on voir dire concerning attitudes and opinions of mental institutions and psychiatrists. The following occurred on voir dire:
"Q Are you prejudiced or influenced one way or the other against psychiatrists or mental institutions?
MR. LIVAUDAIS:
Your Honor, I object to that.
THE COURT:
Sustain the objection.
. . . . .
THE COURT:
Mr. Tonry, we can't ask whether or not any man in here has any opinion what a mental institution is or not is. Mr. Tonry, it is not relevant to this case."
C.Cr.P. 786 provides that the determination of the scope of voir dire examination is within the sound discretion of the trial court. An examination of the record reveals that the trial court granted the defendant wide latitude in the scope of questions asked on voir dire. The disallowed question on which this assignment was based was directed more toward the juror's opinion as to the effectiveness of psychiatrists and mental institutions as opposed to his ability to evaluate and apportion proper weight to the testimony. No abuse of discretion is shown, and the assignment is without merit.
Assignment of Error No. 16
During the voir dire examination of one of the prospective jurors, the following occurred:
"Q The fact that you heard something about this case, do you have any preconceived notion, now, that you could not put aside?
A I have one reservation of the girl that she made a positive identification."
*457 The defendant immediately objected to the answer and moved for a mistrial. This assignment is predicated upon the trial court's denial of that motion.
The statement made by the prospective juror does not fall within the grounds for a mandatory mistrial provided by C.Cr.P. 770. C.Cr.P. 771 provides that certain circumstances may be handled, upon motion of the defendant or State, by admonition. While the trial court did not admonish the jury in the present case, no admonishment was requested by the defendant upon denial of his motion for mistrial.
The failure to grant a mistrial or to admonish the jury does not constitute reversible error in the present case because it is not clear that other prospective jurors heard the remark, as indicated by the inability of the judge and prosecuting attorney to hear the response; we cannot conclude from the record that there was any prejudice to the defendant from this responsive answer to a defense question.
The assignment is without merit.
Assignments of Error Nos. 17 and 25
Defendant contends that the trial court erred in overruling objections based on a violation of the witness sequestration order.
C.Cr.P. 764 provides:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
In the present case the trial court allowed the mother of the nine year old victim to be seated in the courtroom during her daughter's testimony. Later, the court allowed the testimony of the mother into evidence over defendant's objection.
The purpose of sequestering witnesses is to insure that the witnesses will testify from their own knowledge of the events and to prevent the testimony of others from influencing their testimony. State v. Griffin, 329 So.2d 693 (La.1976); State v. Fallon, 290 So.2d 273 (La.1974). The trial judge is vested with the discretion to modify the order of sequestration when such modification serves the interests of justice. C.Cr.P. 764; State v. Sneed, 328 So.2d 126 (La.1976). The record in the present case does not indicate an abuse of that discretion. The presence of the mother during the victim's testimony certainly provided needed reassurance to the young girl. Further, the brief testimony of the mother neither contradicted nor supported the testimony of her daughter in that it dealt only with the mother's physical actions after learning of the violation of her daughter.
These assignments are without merit.
Assignment of Error No. 18
Defendant contends that the trial court committed reversible error in allowing, over defense objection, the victim to walk over to the defense table to point out the defendant. Defendant argues that this act was "theatrical and emotional" and denied defendant his right to a fair trial as provided by Art. 1, § 9 of the Louisiana Constitution of 1921.
The assignment clearly does not reflect reversible error, if it reflects error at all. The courtroom in which the trial was held was rather large and the distance between the witness stand and defense table was substantial. The procedure employed for the in-court identification was designed to minimize the possibility of a mistake in identification by the young witness. While verbal explanation is preferred when sufficient (State v. Williams, 346 So.2d 181 (La.1977)), we cannot say that the courtroom demonstration employed in this case was so prejudicial as to require reversal.
The assignment is without merit.
*458 Assignment of Error No. 19
Defendant contends the trial court erred in overruling the objection to the following testimony on the basis that it was not properly within the scope of redirect examination:
"Q I have one more question. You told Mr. Tonry that it was when the man was on top of you and you were on your stomach that you saw his watch and ring.
A Yes, sir.
Q All right. Now, was his watch and his ring both on the same hand, or were they on different hands?"
R.S. 15:281 provides that redirect examination is to be limited to the subject matter covered on cross-examination and to the explanation of that subject matter, but that the application of the rule is within the discretion of the trial court.
Initially it should be noted that it is not clear that the question objected to did not in fact deal with a subject brought up on cross-examination and thus properly within the scope of redirect. On cross-examination the following occurred:
"Q And when he turned you over, your head was looking sidewards, was it not?
A Yes, sir. That is when I saw his watch and ring."
Even assuming that the court erred in allowing the question, the error was not a character requiring reversal of the conviction. C.Cr.P. 921.
The assignment is without merit.
Assignment of Error No. 26
Defendant argues that the trial court erred in denying his motion for directed verdict. The trial of this case took place in May of 1974, prior to the amendment of C.Cr.P. 778 which eliminated the applicability of directed verdict in jury trials.
Under the jurisprudence dealing with C.Cr.P. 778 prior to its amendment, a motion for directed verdict was properly sustained only when the State failed to produce any evidence in proof of an essential element of the offense. State v. Credeur, 328 So.2d 59 (La.1976); State v. Douglas, 278 So.2d 485 (La.1973). Defendant claims that the prosecution failed to demonstrate sexual penetration, an essential element of the crime of aggravated rape. The record does not support defendant's contention. Sexual penetration was proved directly through the testimony of the victim and indirectly through the testimony of the examining physician. We are unable to say that, as a matter of law, the prosecution produced no evidence on the element of penetration.
The assignment is without merit.
Assignment of Error No. 20
Defendant contends that the trial court erred in admitting into evidence certain allegedly inflammatory and prejudicial photographs taken of the victim during a physical examination made after the rape.
In the instant case the photographs taken are of the nine year old victim's lower anatomy. They were introduced as corroborative evidence depicting numerous insect bites on the victim's legs and thighs, the swelling and redness of the labia majora and labia minora, the discoloration of the hymen and the small laceration below the vagina, extending to the rectum. The photographs also showed the accumulation of soil and grass particles found on the victim's pelvic perineum. While oral testimony indicated the presence of these conditions, it cannot be disputed that the photographs were highly probative in demonstrating the location and extent of the injuries described. In addition, the issue of sexual penetration was hotly contested at trial and the photographs were probative in that respect. In sum, the probative value of these photographs outweighed their potential prejudicial effect on the jury and thus were properly admitted into evidence.
The assignment is without merit.
Assignment of Error No. 21
Through this assignment defendant challenges the ruling of the trial court allowing the parish coroner, Dr. Roy M. Daigrepont, to testify in connection with *459 slide samples taken from the victim's vagina. Defendant contends that the coroner is incompetent to testify as an expert of the matter.
R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
The trial judge has wide discretion in qualifying expert witnesses and his ruling will not be disturbed absent manifest error. State v. Hill, 332 So.2d 475 (La.1976); State v. Traylor, 311 So.2d 847 (La.1975); State v. Grove, 306 So.2d 308 (La.1975).
The record reflects that the witness had been a physician for a number of years and had been coroner for approximately six months prior to his examination of the victim. The testimony objected to by the defendant dealt only with a simple slide examination designed to indicate the presence of spermatozoa. Further, the testimony proved favorable to the defendant in that the test showed no spermatozoa present.
The defendant has failed to show an abuse of the trial court's discretion.
The assignment is without merit.
Assignment of Error No. 27
Defendant contends that the trial court erred in permitting the coroner to testify as an expert on the matter of defendant's mental capacity and condition at the time of the alleged rape.
The assignment is without merit. As noted under Assignment No. 21, the trial court is granted wide discretion in determining the qualifications of expert witnesses. There is no abuse of discretion demonstrated when, as here, the witness is a licensed physician and, in addition, serves as parish coroner. C.Cr.P. 644 inferentially recognizes the expertise of ordinary physicians in mental examinations by making the only requirement for serving on a sanity commission three years experience as a practicing physician.
Assignment of Error No. 28
Defendant contends the trial court erred in allowing the coroner to testify as to the mental condition of the defendant on the day of the crime. Defendant asserts this ruling was error because the order for the examination stated that it was to determine defendant's capacity to understand and assist in the proceedings, not to determine his condition at the time of the crime.
While the order specifically required only an examination of present mental capacity, the coroner testified that he conducted sufficient testing to reach a conclusion as to the defendant's mental capacity at the time of the offense. No error is shown in the permitting of a qualified expert to testify as to the conclusions he reached through personal examination. The assignment is without merit.
Assignment of Error No. 29
During defendant's cross-examination of the coroner, the following transpired:
"Q And that would convince you he was sane?
A No. I continued to question Mr. Gray, and I would like to add, that Mr. Gray volunteeredif I may
THE COURT:
Don't say anything he said, now, Doctor, in regard to the commission of any alleged offense, please."
Defendant thereafter moved for a mistrial on grounds that the statement was prejudicial by connoting that the defendant made a confession or admission to the coroner. The trial court denied the motion and the defendant assigned that ruling as error.
Defendant's contention is without merit because it may not be reasonably inferred from the statement that the defendant confessed. Such a strained interpretation of the statement does not warrant a reversal of the conviction.
The assignment is without merit.
*460 Assignment of Error No. 30
During the State's closing argument, the prosecuting attorney made the following remarks:
". . . You may ask yourself is this too harsh a sentence and I can only answer that question this way: It's your decision to make as to whether or not we are going to put the animals in the cages to keep them away from doing harm to us and our families or are we going to have to put cages around our houses to keep the animals from coming in."
Defendant assigns as error the trial court's failure to grant a motion for mistrial on the basis of these allegedly prejudicial remarks.
In State v. Vernon, 251 La. 1099, 208 So.2d 690 (1968) and State v. McGregor, 257 La. 956, 244 So.2d 846 (1971), we refused to reverse convictions when the district attorney referred to the defendant as an animal, in part because the evidence supported that characterization. Certain morally reprehensible conduct, such as that at issue in the present case, defies characterization as civilized behavior and may more faithfully be described as that of an animal. While in some cases a similar statement by the State may require reversal, we cannot say that in this case the remark was so unfairly prejudicial as to require such a drastic remedy. See State v. Williams, supra; State v. Lee, 340 So.2d 180 (La.1976).
The assignment is without merit.
Assignment of Error No. 31
Assigned as error is the trial court's refusal to give five special jury charges submitted by the defendant.
C.Cr.P. 807 provides:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
Defense Special Charge No. 1 stated: "By `preponderance of the evidence' is meant that something is more likely than not or more probable than not." The charge actually given, while not defining "preponderance of the evidence" like the defendant requested, adequately explained the relative burdens of proof of the State and a defendant who pleads not guilty by reason of insanity. Because the requested charge was thus included in the general charge, the judge did not err in refusing defendant's request.
Special Charge No. 2 read: "Therefore if you believe, after hearing all of the evidence, it is more likely than not defendant could not tell the difference between right and wrong at the time of the commission of the alleged crime then you must return a verdict of not guilty by reason of insanity." The trial court included a similar statement in the general charge to the jury and thus was not required to give defendant's charge.
Special Charge No. 3 stated: "If you find that the defendant committed a crime because of an irresistible impulse then the defendant has proved his insanity while committing a crime and you must therefore return a verdict of not guilty by reason of insanity." Because this charge would not constitute a proper statement of the law without substantial explanation, it was not error for the trial court to refuse to so charge the jury.
Special Charge No. 4 states: "An attempted rape may fail because the perpetrator did not have sexual intercourse with the victim." Special Charge No. 5 states: "Therefore, if you believe beyond a reasonable doubt that the defendant did attempt to rape ____ but failed to have sexual intercourse with her then a verdict of guilty *461 of attempted aggravated rape must be returned." (Victim's name removed by this court). Again, this charge could not have been correctly given without additional explanation, because the essential element of rape is penetration, not sexual intercourse. In addition, the elements of the crime were adequately described in the court's general charge. Therefore, the trial court did not err in failing to give the requested charge.
The assignment is without merit.
Assignment of Error No. 32
Defendant contends that the trial court committed reversible error in providing the jury with the following list of responsive verdicts before their deliberation:
"Guilty
Guilty without capital punishment
Guilty without capital punishment, or benefit of parole, probation, or suspension or sentence
Guilty of attempted aggravated rape
Guilty of simple rape
Not guilty
Not guilty by reason of insanity."
Defendant argues that the inclusion of the sentencing information in the third responsive verdict was prejudicial because it permitted the jury to select a verdict based on the penalty. At the time of the trial the mere fact that the jury was informed of the penalty for a crime charged was not ground for reversible error. State v. Blackwell, 298 So.2d 798 (La.1974) and the cases cited therein. There is no merit in defendant's contention that he was prejudiced by the inclusion of this charge.
Assignment of Error No. 33
Defendant assigns as error the trial court's denial of a motion for new trial based on the following grounds:
"(1) The verdict was contrary to the law and evidence
(2) Expert testimony at trial showed that defendant was insane at the time of the rape
(3) Denial of the motion for an independent examination of the evidence."
C.Cr.P. 851, at the time of this trial, provided:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) A bill of exceptions reserved during the proceedings shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
Defendant does not argue a basis for new trial under C.Cr.P. 851(3) or (4).
An assignment of error based on the refusal of the trial court to grant a new trial on grounds that the verdict was contrary to the law and evidence presents nothing for appellate review. State v. Bartley, 329 So.2d 431 (La.1976); State v. Williams, 310 So.2d 513 (La.1975).
Because we have found no prejudicial error in the assignments reserved during the trial, defendant has failed to demonstrate grounds under C.Cr.P. 851(2); nor does it appear that the ends of justice would be better served by granting a new trial.
*462 The assignment is without merit.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
NOTES
[1] The legislature has enacted a criminal discovery law in 1977 by Act 515.