368 So.2d 1059 (1979)
STATE of Louisiana
v.
Billy Joe HUCKABY.
No. 62925.
Supreme Court of Louisiana.
March 5, 1979.
*1060 Frank W. Middleton, III, Michael Wolf, McCollister, McCleary, Fazio, Mixon, & Holliday, W. L. Wilson, Taylor, Porter, Brooks, & Phillips, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Mary V. Gilliland, Asst. Dist. Atty., for plaintiff-appellee.
SAMUEL, Justice Ad Hoc.
Defendant Billy Joe Huckaby was charged by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. On May 27,1976, after trial before a jury of twelve persons, he was found guilty as charged. Thereafter, the trial court sentenced defendant to serve fifty years at hard labor in the custody of the Department of Corrections.[1] Before this Court, defendant relies upon twelve assignments of error for reversal of his conviction and sentence.[2]
Context Facts
On January 22, 1976, Ms. S. went to the market, then returned home and was preparing lunch, when her door bell rang. When she answered the door, she was confronted by a man with a gun who ordered her into a bedroom and proceeded to rape her. Based on the victim's description of her rapist and on descriptions of an automobile seen parked in front of the victim's house by her neighbors, and likewise observed by Ms. S. as she looked out her window immediately following the incident, an investigation ensued leading to defendant's arrest. Both prior to and during trial, the victim identified defendant as the perpetrator of the crime. Evidence seized from defendant's residence, pursuant to a search warrant, was introduced at trial.
Assignments of Error Nos. 1, 2 and 3
Defendant argues that the trial court erred in restricting defense examination of witnesses at the hearing on the motion to suppress identification evidence (Assignments of Error Nos. 1 and 2) and in denying the motion to suppress at the close of the hearing (Assignment of Error No. 3).
Defendant was arrested on January 23,1976, the day following the alleged rape, *1061 and at 6:00 p. m. was placed in a lineup and identified by the victim. Prior to the lineup, an attorney was appointed to represent the defendant,[3] and defendant and appointed counsel selected the lineup participants. At the hearing on the motion to suppress the identification, defense counsel attempted to question various police officers, as well as the victim herself, about the details of the victim's description of her assailant given to authorities prior to the lineup. When the prosecuting attorney objected to these questions, defense counsel argued that evidence of the victim's prior descriptions was relevant to establish that, with the exception of defendant, the state failed to include in the lineup any individuals manifesting the particular features previously described by the victim. Noting that defendant had not established any state control over the selection of the lineup participants, the trial court sustained the state's objection and precluded counsel from eliciting details of the prior descriptions.
Frequently, evidence of the victim's prior description of the perpetrator of the crime charged is relevant to a determination of whether a pre-trial identification should be suppressed. See State v. Guillot, 353 So.2d 1005 (La.1977). However, under the facts of this case, the trial court did not abuse its discretion in ruling that such evidence was not pertinent to the suppression issue. Although counsel was given an opportunity to show otherwise, the evidence established that defendant and the attorney appointed to represent him at the lineup[4] selected the five other lineup participants. Thus the victim's prior description of her assailant was not relevant to show that the state had discriminatorily excluded from the identification procedure individuals displaying characteristics similar to those described by the victim.
Moreover, the trial court did not err in denying the motion to suppress the identification. It is the likelihood of misidentification, not merely suggestive identification procedures, which violates due process. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Guillot, supra. Here the totality of circumstances establish that the pre-trial identification had independent indicia of reliability: although the victim's assailant apparently wore a wig and sunglasses, she had a face to face confrontation with him for some period of time; her identification at the lineup procedure was positive; and the lineup took place the day following the commission of the offense. Moreover, the victim described a tatoo including the words "Can I" or "I Can" she observed on her assailant's leg. The accuracy of this description was established at trial when the state introduced a photograph of defendant's leg depicting a tatoo which reads "Can I Do It," with the words "Can I" appearing larger than the rest of the slogan.[5] See State v. Guillot, supra.
Assignments of error 1, 2 and 3 are without merit.
Assignments of Error Nos. 4, 9 and 10
Defendant contends that the trial court committed reversible error in denying his motion to suppress the fruits of a search conducted pursuant to a warrant (Assignment of Error No. 4) and in admitting into evidence at trial various items seized during the search (Assignments of Error Nos. 9 and 10).
*1062 On January 23, 1976, the day following the rape, officers from the Baton Rouge Police Department obtained a search warrant for a residence on Walker Drive, Brown Heights Subdivision, in Baker, Louisiana. The warrant was issued upon the following affidavit by Sergeant Wayne Spina and Detective William Rose of the Baton Rouge City Police Department:
That on 1/22/76, Det. Sgt. Phil Theriot, of Baton Rouge City Police Dept. contacted, Baker, La., Police Department Personnel, Sgt. Funderburk, and was advised that one Warren Gable, W/M, RT. 4, Box 90, Denham Springs, La., owned a vehicle (a white over maroon Chrysler, with a whip C.B. Antenna, Lic # 40A559), which fits the description of auto used in crime as described by victim to affiant. Upon checking with Warren Gable by Det. Perkins and Sgt. O'Brien, (B.R.C.P. D.), it was learned that above described vehicle had been purchased by one Billy Joe Huckaby, W/M who resided in Brown Heights Subdivision. Sgt. Wayne Spina located above vehicle at 7251 Walker Drive, Brown Heights Subdivision, Baker, La. Above Billy Joe Huckaby was found in Denham Springs, La., on 1/23/76, and came to Denham Springs, La. Police Department, where he was observed by affiant to fit the description given to them by the victim of the Aggravated Rape. It was also learned by officers that Billy Joe Huckaby was in the vicinity of 12411 East Robinhood Drive at the time of the Aggravated Rape and Armed Robbery.
The warrant was executed that same day at approximately 6:30 p. m. Various items were seized and later introduced into evidence at trial.
The affidavit clearly recites facts sufficient to establish probable cause for the issuance of a search warrant. La.Const. Art. 1, § 5 (1974); La.C.Cr.P. art. 162. See State v. Richards, 357 So.2d 1128 (La.1978); State v. Harris, 343 So.2d 145 (La.1977). Defendant, however, relying upon this Court's decision in State v. Rey, 351 So.2d 489 (La.1977), asserts that the evidence seized pursuant to the warrant must nevertheless be suppressed because the affidavit contains deliberate misrepresentations made by the affiant.
In State v. Rey, supra, this Court observed that minor inaccuracies in an affidavit may not affect the validity of a search warrant. When faced with an affidavit containing inaccurate statements, the general rule is to excise the inaccurate statements and then examine the residue to determine if it supports a finding of probable cause. However, a warrant based on an affidavit containing intentional misrepresentations must be quashed. See also State v. Hysell, 364 So.2d 1300 (La.1978); State v. Babbitt, 363 So.2d 690 (La.1978); State v. Lamartiniere, 362 So.2d 526 (La.1978); State v. Segers, 355 So.2d 238 (La.1978).
In the instant case, we are satisfied that the trial judge properly denied the motion to suppress based on the alleged misrepresentations in the supporting affidavit. Specifically, defendant alleged that the evidence adduced at the hearing on the motion established that (1) Sergeant Funderburk of the Baker Police Department did not advise Sergeant Theriot of the Baton Rouge Police Department that Warren Gable owned a vehicle fitting the description given by the rape victim to Detective Rose; (2) no description of the alleged rapist's car was given to the affiant by the victim; (3) the victim gave no description to anyone referring to a whip C.B. antenna and a license number; (4) the affiant did not actually receive any description of the assailant from the victim; and (5) the defendant did not tell the affiant that he had been "in the vicinity of [the address of Ms. S.'s residence] at the time of the aggravated rape and armed robbery." Relative to the first defense allegation, the evidence adduced at the suppression hearing established that contrary to the affidavit Sergeant Funderburk did not inform Sergeant Theriot that Warren Gable owned a car matching the victim's description, but merely supplied him with a license plate number of a similar car, which was then apparently checked with vehicle registration to reveal the name of Warren Gable.
*1063 However, this misstatement, attributable to the affiant, was clearly a reasonable mistake made in good faith. Excising the incorrect portions of the statement, ample probable cause existed for the issuance of the warrant.
The next three allegations present a more difficult question. Evidence presented at both the hearing and the trial[6] established that the victim gave a description of the vehicle as a maroon or reddish car with a different color top and a CB antenna, together with a description of her rapist, to Sergeant Spina and not to Detective Rose. The affidavit itself states that both Sergeant Spina and Detective Rose appeared before the judge who issued the warrant. However, according to the testimony, only Detective Rose appeared before the issuing judge and only Detective Rose signed the affidavit. Under the facts of this case, this discrepancy is not fatal. It is not required that each investigator appear and swear to the affidavit. State v. Culotta, 343 So.2d 977 (La.1976). Here the affidavit, although signed by only Detective Rose, sufficiently indicates that the information contained therein was the result of the combined investigative efforts of both Sergeant Spina and Detective Rose. See State v. Lamartiniere, supra; State v. Segers, supra. Thus, with the exception of the reference to the license plate number, referred to above, there are no misrepresentations which must be excised from the affidavit.
Likewise our review of the evidence establishes that defendant's fifth allegation is not truly a misrepresentation or otherwise inaccurate statement. Prior to obtaining the search warrant, the officers had spoken to defendant who informed them that on the morning of the rape he had gone to a K-Mart to buy transmission fluid and oil. The location of that particular store is in the vicinity of the victim's home.
Assignments of error 4, 9 and 10 are without merit.
Assignments of Error Nos. 11 and 12
Defendant contends that the trial court erred in accepting a state witness as an expert in the comparison of hairs (Assignment of Error No. 11) and in permitting the introduction into evidence of the hair samples used by the witness in her comparison tests (Assignment of Error No. 12).
La.R.S. 15:466 provides:
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court.
Thus the competency of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings will not be disturbed in the absence of manifest error. State v. Sepulvado, 359 So.2d 137 (La.1978); State v. Gray, 351 So.2d 448 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976).
In the instant case, the trial judge did not abuse his discretion in overruling defendant's objection to Shirley Phillips' qualification as an expert in the comparison of hair samples. Ms. Phillips, a criminalist at the State Police Crime Lab for five years, received on the job training, attended an instructional course sponsored by the F.B.I. specifically directed toward the examination of hairs, and had made several hundred hair comparisons during her tenure at the crime lab. She had previously been accepted as an expert in this field. The witness' reliance on procedures and techniques developed by others in making her comparisons does not prevent her from qualifying as an expert. See State v. Titus, 358 So.2d 912 (La.1977).
Defendant also complains of the admission of hair samples used by Ms. Phillips in her comparison test. These hair samples were obtained from the victim's bedspread following the incident here in question and from defendant subsequent to his arrest. In Ms. Phillips expert opinion, although the *1064 nature of hair precludes positive identification, the hairs from the two samples were sufficiently similar that they could have come from the same person. When the state sought to introduce the hair samples into evidence, defendant objected "on the basis that the witness was not sufficiently qualified to testify about the information elicited in connection with these exhibits." As previously noted, the trial court did not abuse its discretion in qualifying Ms. Phillips as an expert in the field of hair comparisons. Thus there was no error in permitting her to state her opinion. La.R.S. 15:464.
In brief, defendant additionally argues that the admission of the exhibits was error since Ms. Phillips did not employ diagrams or slides to demonstrate to the jury the manner in which she compared the two hair samples. However, the witness did carefully state the facts upon which her opinion was based. This verbal explanation was sufficient. La.R.S. 15:465. Moreover, as defendant did not present this objection before the trial court, he cannot now complain on appeal. La.C.Cr.P. art. 841.
Assignments of error 11 and 12 are without merit.
Assignment of Error No. 13
Defendant argues that a mistrial should have been declared when it was revealed during trial that the state had failed to provide the defense with certain exculpatory evidence. Defendant's complaints relate to a fingerprint analysis of the scene of the offense and the victim's initial description of her rapist.
Prior to trial, defendant filed a motion to inspect. Included in the motion was a request to inspect any fingerprints obtained in connection with the state's investigation of the case. The request was denied. Defendant had also filed a pre-trial motion to be furnished "with any and all evidence or information . . . known to any agents of the State tending to show that defendant is innocent of the offense charged, serving to impeach the credibility of any potential witnesses, or that may lead to the discovery of any such evidence or information." The state responded that it would furnish defense counsel with such information if any became available.
During trial Sergeant Spina, one of the investigating officers, testified that two men from the crime laboratory, Mr. Ethridge and Mr. Churchman, came to the scene and "advised me that they had picked up some prints." Neither Sergeant Spina nor Mr. Churchman, who was subsequently called as a state witness relative to hair samples, were examined or cross-examined about the nature of the prints. Following the close of the state's case-in-chief, the defendant moved for a mistrial based in part on the failure of the state to inform him that Ms. S.'s residence had been dusted for prints. The prosecutor responded "we don't have fingerprints, all that shows that he didn't touch anything or that they just weren't found." The trial court denied the motion.
In moving for the mistrial, defendant additionally argued that the prosecution had improperly failed to inform the defense prior to trial of a prior description given to the authorities by the victim, which description did not match defendant's appearance. The evidence presented during the state's case-in-chief revealed that on at least one occasion the victim had described her rapist as having shoulder length brown hair. However, additional testimony and evidence tended to establish that the defendant had worn a wig during the commission of the offense. Defendant's request for a mistrial based on this evidence was also denied by the trial court.
At the time of the trial of this offense, in May 1976, there was limited pre-trial discovery in Louisiana in criminal cases. State v. Gray, supra. Neither statements made by witnesses nor the results of fingerprint tests were generally discoverable. State v. Thornton, 351 So.2d 480 (La.1977); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Hunter, 340 So.2d 226 (La.1976); State v. Chase, 327 So.2d 391 (La.1976). However, these limitations upon discovery may not be allowed to infringe upon an accused's constitutional *1065 rights to due process of law or to offend principles of fundamental fairness. State v. Gray, supra. Suppression by the state of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, "if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to disclose, that duty should arise equally even if no request is made." United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). However, when no specific request has been made by the defense, a post-trial discovery that evidence has been suppressed requires a determination of whether the subject matter requested would, upon its evaluation in the context of the entire record, create a reasonable doubt as to the defendant's guilt. United States v. Agurs, supra. See also State v. Harvey, 358 So.2d 1224 (La. 1978); State v. Falkins, 356 So.2d 415 (La. 1978); State v. May, 339 So.2d 764 (La. 1976).
We have reviewed the defendant's complaints relative to suppression in light of these general principles and conclude that the trial court did not err in refusing to declare a mistrial. Even assuming that defendant's motion to inspect was a specific request for disclosure of the failure of state experts to discover defendant's fingerprints in the victim's residence, non-disclosure prior to trial does not constitute a basis for reversal of defendant's conviction under the facts of this case. Although not presented to the jury, the information was made available to defendant during the course of the trial. Moreover, the evidence concerning the fingerprints was not such that it created a reasonable doubt about guilt which did not otherwise exist when considered in the context of the entire record, i. e., the victim's positive identification of a distinctive tatoo on defendant's leg, her positive identification of defendant as the perpetrator of the rape at the pre-trial lineup, the testimony by the victim and two neighbors identifying defendant's car as having been parked in the front of the victim's house at the time of the rape, and the opinion evidence by the state's expert witness that pubic hairs taken from the scene of the rape and from the defendant matched and thus could have come from the same person. See State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977).
With respect to the alleged "misidentification" of defendant by the victim, evidence that the victim had previously described the perpetrator of the offense as having shoulder length brown hair was before the jury when it deliberated defendant's guilt or innocence. Thus, it could not be said to have created a reasonable doubt as to defendant's guilt which did not otherwise exist. See State v. Falkins, 356 So.2d 415 (La. 1978); State v. Schamburge, 344 So.2d 997 (La.1977).
Assignment of error 13 is without merit.
Assignments of Error Nos. 17, 20 and 23
Defendant argues that the trial court erred in denying his motion for a new trial on the grounds that the verdict was contrary to the law and the evidence, that new evidence had been discovered post-trial and that the ends of justice would be served by the granting of a new trial.
Defendant's argument that the verdict is contrary to the law and the evidence is based on an analysis of the sufficiency of the testimony introduced at trial. However, it is only where there is no evidence at all of the offense or of some essential element thereof that this Court has the authority to annul the conviction. State v. Banks, 362 So.2d 540 (La.1978); State v. Blackstone, 347 So.2d 193 (La.1977). See La.Const. Art. 5, § 5(C) (1974). Our review of the record in this case establishes that there was at least some evidence to support a jury finding of each of the essential elements of aggravated rape and of defendant's connection with the offense.
The contention that the discovery of new evidence after trial mandated the granting of a new trial is based on a food stamp receipt found in a defense witness' *1066 purse. In considering a motion for a new trial based on newly discovered evidence, the test employed is whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Lovett, 359 So.2d 163 (La.1978); State v. Provost, 352 So.2d 661 (La.1977). In reviewing the denial of such motions on appeal, this Court has held that the trial judge has considerable discretion in evaluating the impact of newly discovered evidence on the verdict and that his ruling will be disturbed only when there is a clear showing of abuse of that discretion. State v. Kelt, 362 So.2d 751 (La.1978); State v. Provost, supra. Here the food stamp card proved that the witness was in a certain place on a certain day, but did not substantially change any of the trial testimony nor add significantly to defendant's alibi defense. Thus the trial court did not abuse its discretion in denying the motion for a new trial on this ground.[7]
Finally, we conclude that the trial court did not abuse its discretion in rejecting defendant's argument that the ends of justice would be served by the granting of a new trial. See State v. Carter, 362 So.2d 510 (La.1978); State v. Matthews, 354 So.2d 552 (La.1978).
Assignments of error 17, 20 and 23 are without merit.

Decree
For the reasons assigned, the conviction and sentence of defendant Billy Joe Huckaby are affirmed.
NOTES
[1] This is the appropriate penalty following the judicial declaration that the statutory death penalty, in effect at the time of the commission of the offense, was unconstitutional. See State v. Smith, 340 So.2d 247 (La.1976); State v. Craig, 340 So.2d 191 (La.1976).
[2] Defendant has neither briefed nor argued Assignments of Error Nos. 5, 6, 7, 8, 14, 15, 16, 18, 19, 21 and 24. Thus we consider them abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[3] Counsel was apparently appointed at that stage as a precautionary measure. A defendant is not constitutionally entitled to have counsel present at pre-indictment lineup procedures. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Lozan, 359 So.2d 108 (La.1978); State v. Rudolph, 332 So.2d 806 (La.1976).
[4] The attorney appointed to represent defendant at the lineup did not represent defendant at suppression hearing or at trial. However, defendant did not call the attorney to testify concerning the identification procedure.
[5] This Court may consider all pertinent evidence adduced at trial in determining whether a defendant's motion to suppress was properly denied. State v. Schmidt, 359 So.2d 133 (La. 1978); State v. Dunbar, 356 So.2d 956 (La. 1978).
[6] See footnote 5, supra.
[7] Moreover, it was not established that the evidence was such that it could not have been discovered prior to trial with the exercise of reasonable diligence. La.C.Cr.P. art. 851(3).