353 So.2d 1005 (1977)
STATE of Louisiana
v.
Ellis GUILLOT.
No. 60151.
Supreme Court of Louisiana.
December 19, 1977.
*1006 John F. Rau, Jr., Harvey, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Gretna, for plaintiff-appellee.
DIXON, Justice.
On May 29, 1974 the defendant was charged by bill of information with the offense of aggravated crime against nature (R.S. 14:89.1), allegedly committed on or about May 11, 1974. On September 24, 1974, after trial by jury, defendant was found guilty as charged. On November 24, 1974 he was sentenced to ten years imprisonment at hard labor. His appeal was lodged in this court on June 30, 1977.
The facts surrounding the offense are as follows. On the evening of May 10, 1974, the victim, a sixteen-year-old girl, and her boyfriend were parked in his car in the rear of Brectel Park, located in Orleans Parish. The two had been on the back seat of the car for a while when they were interrupted *1007 by a knock on the window. A man entered the front seat of the car, identified himself as a patrolman in the park, and told the young couple that he had to either report them to the police or turn them over to their parents. The couple then got into the man's red pickup truck, as ordered, and rode with the man for approximately twenty to thirty minutes. During the drive the man said that he was going to give the couple a breakhe would take the boy back to his car, follow him to the Mississippi River Bridge (the boy lived on the East Bank of the river) and drive the girl home. After the man, accompanied by the victim, followed the boy to the bridge, he turned and drove toward a shopping center located in Jefferson Parish, eventually arriving at an apartment. During the ride the man placed his hand on the victim's head and pushed it down on his penis, forcing her to perform oral copulation. After arriving at the apartment, the man and the victim went inside where he forced her to perform an act of oral sex a second time and then forced her to engage in "normal" sexual intercourse. Thereafter both returned to the truck and the girl was driven home.
After the victim told her parents what had happened, she was taken to the police station. There she gave the police a description of her assailant and assisted in making a composite picture.
During his investigation of the case, Detective Michael Ling received information from another police officer about a possible suspect. According to this officer the suspect, defendant Ellis Guillot, fit the description given by the victim, had been arrested before for attempted rape, had used a similar method of operation, and owned a red pickup truck. The victim and her companion (who had examined many photographs at the police station) were then shown a photo lineup and the defendant's picture was identified. Shortly thereafter the defendant was arrested at his Jefferson Parish apartment.

Assignment of Error No. 1
During trial, the defendant objected to the State's introduction of evidence of the photographic lineup. A hearing was held outside the presence of the jury for the purpose of determining the admissibility of the identification. The trial judge ruled the evidence inadmissible, on grounds that the lineup was impermissibly suggestive. We denied the State's application for supervisory writs, stating that, "Absent of showing of palpable error of law, irreparable injury, or injustice, this court will not interfere in the orderly trial process of the district court." State v. Guillot, 299 So.2d 803 (La.1974).
The defendant then filed a motion to suppress evidence seized from the defendant (pubic hairs) after his arrest and all subsequent identifications. This assignment was taken to the denial of that motion by the trial court. Defendant argues that because the photographic identification was suppressed, it could not be considered in determining probable cause to arrest. Without the identification, he argues, the arrest was without probable cause and therefore all evidence seized as a result of the arrest should be suppressed as "fruit of the poisonous tree."
We need not reach defendant's contention, however, because, after careful consideration, we hold that the photographic lineup was not violative of the defendant's due process rights and therefore the trial court erred in suppressing it.[1]
On May 17, 1974, six days after the offense, both the victim and her boyfriend were shown, outside each other's presence, a group of six or seven photographs, including one of the defendant. Both made positive identifications of the defendant. The trial judge, at the time of his ruling, stated:
"I think we all agree that the doctrine is fairness that the photographic line up or *1008 the physical line up must be such that the due process is not violated that there is no suggestion made to the witness since the witness has an equal chance of picking out anyone of the photographs. I think you gentlemen agree with that.
". . .
"This Court does not feel that this was a fair photographic line up, that the element of fairness, there were really only three pictures that the witness could have picked out and one of those is very questionable, in fact, two of those are somewhat questionable, certainly one of those is questionable. So the court is going to rule that the photographic line up violated due process and the pictures are not admissible."
Apparently this ruling was based solely on the trial judge's evaluation of the suggestiveness of the photographs.
In determining the constitutionality of an out-of-court identification, several factors must be considered. First, the suggestiveness of the identification procedure must be evaluated. In the present case, the procedure was not suggestive. The officer conducting the identification first separated the two witnesses. Then, alone in a room with the witness, he showed each of the seven photographs. The photographs used had no distinguishing marks.[2] It is clear, therefore, that the procedure used was not suggestive.
Further, the pictures (or persons) used in the lineup should not display the defendant so singularly that the witness' attention is unduly focused upon the defendant. It is often stated that a strict identity of characteristics is not required; rather, a sufficient resemblance to reasonably test the identification is necessary. State v. Gray, 351 So.2d 448 (La. 1977); State v. Anthony, 347 So.2d 483 (La.1977); State v. McSpaddin, 341 So.2d 868 (La.1977); State v. Hargrove, 330 So.2d 895 (La.1976). This determination is made by examining articulable features of the pictures or persons used:[3] height, weight, build; hair color, length and texture; facial hair; skin color and complexion; and the shape and size of the nose, eyes, lips, etc. In the present case, the trial judge found that out of seven photographs, only two or three could have been that of the defendant. This number should be enough to reasonably test the identification. We have determined after examining the photographs that there is no undue suggestion, and, therefore, we now hold that the trial court erred in finding the identification to be tainted by suggestion.
Even should the identification be considered suggestive, this alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
In Manson v. Brathwaite, supra, a police officer, working undercover, purchased narcotics from "Dickie Boy" Cicero, and then returned to the police station where he described the seller to other officers. A photograph of a person fitting the description given by the officer was placed on his desk and he later, while alone and viewing no other pictures, identified it as that of the seller. The Supreme Court stated:
"We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. The factors to be considered are set out in Biggers. 409 U.S., at 199-200, 34 L.Ed.2d 401, 93 S.Ct. 375. These include the opportunity *1009 of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." 97 S.Ct. at 2253.
Applying the Manson analysis to the present case obtains the following:
1. The opportunity to view: The victim was with the defendant for approximately one to one and a half hours; her boyfriend for about twenty-five minutes. Both had the opportunity to view the defendant while riding in the cab of his truck. Although it was night at the time of the incident, the lack of lighting was offset by their close proximity to the defendant and by the length of time spent in his presence. The girl also spent ten to fifteen minutes inside a well lighted apartment with the defendant.
2. The degree of attention: Neither witness was a casual observer; both most certainly had their attention riveted to the defendant.
3. The accuracy of the description: The description given by the victim and the composite picture made with her assistance both matched that of the defendant.
4. The witness' level of certainty: Both witnesses made positive identifications.
5. The time between the crime and the confrontation: The lineup occurred only six days after the offense was committed.
Weighing these indicia of reliability against the marginally suggestive identification process, it is clear that there was not a significant chance of misidentification, and, therefore, the defendant was not denied due process. The police, with the information received concerning the defendant's prior similar acts and the positive identification, had probable cause to arrest the defendant. Therefore, the trial court did not err in denying the motion to suppress evidence seized from the defendant at the time of his arrest. Neither was it error to allow evidence of subsequent identifications.
The assignment is without merit.

Assignments of Error Nos. 2 and 3
After the trial the defendant filed a motion for new trial on grounds that the State failed to introduce evidence on venue. These assignments are based on the denial of that motion.
While the State must prove venue beyond a reasonable doubt, our review is limited to whether there was some evidence on venue submitted to the jury, not to the sufficiency of that evidence. State v. West, 319 So.2d 901 (La.1975); State v. Jackson, 308 So.2d 265 (La.1975). The State did not fail to produce some evidence of venue.
These assignments are without merit.

Assignment of Error No. 4
During the State's closing argument the following occurred:
"MR. KONRAD: [for the state]
Okay.
We know from Connie's testimony that they were in front of the Oakwood or the Oakwood Shopping Center on either the service road or West Bank Expressway.
MR. RAU: [for the defense]
She didn't say that. She said they were going towards
MR. KONRAD:
She said at the service road and the west bank or either on the west bank expressway. If you want to read that back
THE COURT:
She said they were going toward the shopping center and she thinks she was on the West Bank Expressway, the service road or the West Bank Expressway
. . . . .
MR. KONRAD:
Can we approach the Bench?
(Discussion off the record.)
MR. KONRAD:
Gentlemen

*1010 MR. RAU:
Wait. If Your Honor please, for the record I want to object to the Court's remarks.
MR. KONRAD:
I really think, Your Honor, that on that one point, on the point that I made at the bench that the only
THE COURT:
The Court will reconsider its ruling where Mr. Rau objected. Each side is entitled to draw conclusions from the evidence. The Court on reconsideration feeling that Mr. Konrad said it had to be going west
MR. RAU:
I'll object again, Your Honor."
Defendant contends that the trial judge's remarks constituted a comment on the evidence and that it was error to deny the motion for new trial urging those grounds.
C.Cr.P. 772 provides:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
This court has on numerous occasions held that remarks made by the trial judge in the jury's presence giving reasons for his rulings are not objectionable as comments on the evidence provided they are neither prejudicial nor unfair to the defendant. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Taylor, 347 So.2d 172 (La.1977); State v. Hardy, 344 So.2d 1018 (La.1977); State v. Young, 337 So.2d 1196 (La.1976); State v. Lane, 302 So.2d 880 (La.1974). While the statement in this case comes close to a comment on the evidence, it does not appear that the defendant was so prejudiced as to require a new trial.
The assignment is without merit.
For the foregoing reasons, the conviction and sentence are affirmed.
TATE, J., assigns concurring reasons.
TATE, Justice, concurring.
I concur in the affirmance of the conviction.
With regard to Assignment of Error No. 1, however, I would overrule on a different basis the motion to suppress evidence (pubic hairs) seized from the defendant after his arrest. The defendant contends that the seizure was illegal, since the arrest resulted from an illegal photographic lineup previously held to be impermissibly suggestive by the trial court.[1]
Nevertheless, the issue before us is far more narrow than the illegality or not of the lineup. Even though it was improperly held, I do not believe that all consequences of the arrest following it are stricken with constitutional invalidity.
The purposes of the exclusionary rule are served by excluding from evidence the improper identification itself. The seizure of pubic hairs after the arrest of the accused is only indirectly connected with the constitutional violation represented by the lineup (they could, for instance, have been taken not only immediately after the arrest but during the trial itself). Therefore, the deterrent policy and individual protections protected by the constitutional provision violated are not served by suppression: The causal connection between the initial unlawful conduct and the evidence sought to be suppressed is so attenuated as to dissipate its initial taint. See State v. Jenkins, 340 So.2d 157 (La.1976). See also, U.S. v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).
Under the circumstances shown, I think we can reasonably say that the pubic hairs seized were not the fruit of the constitutional violation represented by the lineup, especially considering the non-flagrant nature of official misconduct and its lack of *1011 purpose to serve as a mere pretext to secure the evidence now sought to be suppressed. Cf., Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The invalidity of the lineup should not, by itself, strike with invalidity the consequent arrest; even if it does, then the defendant's complaint should be limited to suppression of any evidence seized incident to the arrest and as an immediate consequence thereof.
In summary, here, the investigation subsequent to the arrest and after booking and Miranda warnings, etc., including the taking of the pubic hairs, should be regarded as insulated from the initial taint of illegality of the lineup by the intervening circumstances and by the attenuated causal connection between the initial illegality and the subsequent seizure, which only indirectly resulted, if at all, from the tainted lineup.
NOTES
[1] A writ denial, such as that in the present case, is not to be construed as a judgment determinative of the merits, but rather as an indication that, presented with limited briefs and records, this court was unable to identify a clear error of law significant enough to interfere with the trial proceedings. See State v. Smith, 322 So.2d 197 (La.1975).
[2] The name of the person depicted by the photograph and the offense for which he was arrested was written on the back of each picture. Testimony at the hearing, however, indicates that the witnesses were not allowed to see the back of the picture during the identification procedure.
[3] Features such as height, and to a certain extent, weight and build, are of limited relevance where, as in this case, the photographs show only the shoulders and head.
[1] The evidence of the lineup was therefore suppressed. I doubt that, upon the defendant's appeal, we can re-examine that interlocutory ruling which was adverse to the state. I have further reservations that the trial court erred in suppressing evidence of the photographic lineup.