449 So.2d 620 (1984)
STATE of Louisiana
v.
James Albert DRYER.
No. 83 KA 1122.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
Rehearing Denied May 21, 1984.
*621 William M. Quin, Asst. Dist. Atty., Amite, for plaintiff-appellee.
R. Judge Eames, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
James Albert Dryer (defendant) was charged by bill of information with the armed robbery of Nadine Adams at John's Curb Market # 2 in Pontchatoula, Louisiana, a violation of La.R.S. 14:64. Defendant pled not guilty. After trial by a twelve-person jury, defendant was found guilty as charged. He was sentenced to serve twenty years with the Department of Corrections without benefit of probation, parole, or suspension of sentence. He has appealed and alleged two assignments of error.
On October 29, 1981, Nadine Adams was working the 11:00 p.m. to 7:00 a.m. shift at John's Curb Market # 2. At approximately 12:04 a.m. on October 30, Adams was sitting in the office counting money, when she looked up and saw a shotgun come through the door. The assailant placed the gun, which Adams described as a double-barrel shotgun, about five inches from her head. He told her that this was a "stickup" and that he wanted her money. The robber took all the money she had in the office and asked her if there was any more. She indicated that there was some in the cash register. His accomplice, who was never apprehended, opened the cash register and removed the contents. Adams testified that a total of approximately $220.00 was taken, including $100.00 from the cash register. Three rolls of quarters, a roll of nickels and a roll of pennies were taken from the register. Adams testified that the robber wore blue jeans and a white pullover shirt and that she got a good look at him because he had no mask on and the robbery took about five minutes. She identified the defendant in a lineup on October 30, 1981, at the Ponchatoula Police Station. She subsequently identified the defendant *622 in court as the man who robbed her with a shotgun on October 30. A shotgun was introduced by stipulation as a gun found between 1:00 a.m. and 9:00 a.m. on October 30 at the Chicken Shack Bar in Hammond. Adams also identified the shotgun as the gun used by defendant.
ASSIGNMENT OF ERROR NUMBER 1
The trial court erred in sustaining the state's objection to questions directed to a material witness called to testify at defendant's hearing on "Motion For New Trial" in relation to prejudicial conduct which occurred in the presence of jurors outside the courtroom which made it impossible for the defendant to obtain a fair trial.
After being found guilty as charged by an 11 to 1 vote of the jury, defendant retained new counsel who initially filed a motion for new trial. In connection therewith, a lengthy new trial hearing was conducted by the trial court over a period of many months. During the course of that hearing, counsel propounded the following question to Glenn Burge, who had served as foreman of the jury which convicted defendant: "Do you recall that two women Jurors became emotionally distraught and began to reveal details of robberies that had victimized members of their family?"
The State objected to the question on the grounds that La.R.S. 15:470 did not permit such an inquiry. The trial judge sustained the objection. Counsel laid absolutely no predicate before asking Burge this question. His whole cross-examination of Burge prior to that time concerned Burge's acquaintance with John Bohning, the owner of John's Curb Market, and the events surrounding an alleged incident which occurred at the coffeepot in the Grand Jury room on the morning of the trial after the jury had been selected. Burge testified he had no recollection of defendant entering the room on that morning to get coffee.
Later, during counsel's examination of Arthur McDonald, the juror who voted not guilty, he was able to develop McDonald's version of what apparently occurred on the morning when defendant entered the coffee room where several jurors were drinking coffee. McDonald testified that on the second day of the trial and after the jury was selected but before trial began, several jurors were in the Grand Jury room which had a set of double doors, both of which were open. There was a coffeepot on a table in the rear of the room where anyone could get complimentary coffee. McDonald said people were coming and going, getting coffee. He testified that defendant came into the room to get coffee. McDonald then made the following observation:
and I just got the feeling, you know, because I thought to myself that this man ain't got a chance and the trial hadn't even started yet, you know, they are just felt likelooked like they had a hostile feeling toward him, you know, they had told one of the bailiffs, what is he doing in here, you know, he is not supposed to be in here, to get him out and the bailiff come got him out.
Using his examination of Burge and McDonald, counsel now argues that La. R.S. 15:470 cannot prohibit him from developing evidence concerning alleged jury misconduct because the conduct complained of violated defendant's constitutional right to a fair trial by an impartial jury. We disagree and find that the record falls woefully short of presenting a substantial claim that defendant's rights were violated.
Pursuant to the Louisiana Jury Shield Law, La.R.S. 15:470, no petit juror is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify, or impeach any verdict found by the jury of which he was a member. However, the jury privilege of La. R.S. 15:470 is not absolute and must yield to a substantial showing that the defendant was deprived of a constitutional right, such as a fair trial, due process or cross-examination. State v. Graham, 422 So.2d 123 (La.1982); State v. Gomez, 433 So.2d 230 (La.App. 1st Cir.1983), writs denied, 440 So.2d 730 (La.1983) and 441 So.2d 747 (La.1983).
*623 The cases cited by defendant in support of this assignment are inapposite factually. In State v. Marchand, 362 So.2d 1090, 1094 (La.1978), the Supreme Court dealt with a bailiff's communication to the foreman and another member of the jury that defense counsel's objection prevented the judge from granting their request to have access to an alleged confession during deliberations. The court held that such communication deprived the accused of his constitutional and statutory right to an impartial jury verdict untainted by unauthorized communications received in contravention of statute or influenced by any consideration other than defendant's innocence or guilt solely on the basis of the evidence properly brought before the jury.
In State v. Wisham, 371 So.2d 1151 (La. 1979), the Supreme Court held that two jurors who allegedly viewed the arrest of a defense witness during a recess should have been permitted to testify at a motion for new trial concerning their observations. The trial judge refused to permit the defense to offer evidence to show that the jurors would not only testify that they observed the arrest but also that they told the other jurors and that it was discussed at length during jury deliberations. In remanding the case, the Supreme Court ordered the trial court to hear the evidence relative to viewing the arrest and informing the others of its occurrence. The Supreme Court characterized the conduct as "presumptively prejudicial."
On remand, the trial judge permitted jurors also to testify that the conduct had no effect on their deliberations. In State v. Wisham, 384 So.2d 385, 387 (La.1980), a majority of the Supreme Court held that such testimony was impermissible, holding:
The State should not have been allowed to examine the jurors as to the effect the extraneous prejudicial information had on the jury deliberations. Testimony of this nature by the jurors would impeach their own verdict within the prohibition of La.R.S. 15:470. The policy behind this statute is to preserve the confidentiality of discussion among jurors in their deliberation, as well as the finality of jury verdicts. State v. Marchand, 362 So.2d 1090 (La.1978); State v. Abney, 347 So.2d 498 (La.1977); State v. Durr, 343 So.2d 1004 (La.1977).
Defense counsel characterizes in brief the coffee incident in the Grand Jury room as demonstrating the jurors' attitude toward defendant even before trial began as they "immediately began to demonstrate hostility toward the defendant, to denigrate him and to view his presence as offensive and provocative." We have heretofore quoted juror McDonald's observations about the incident, and that is the only evidence in the record concerning the coffee incident. There was nothing improper in the jurors' desire to be separated from defendant. There should be absolutely no opportunity for any sort of social contact between jurors and a defendant during trial. We find that it was proper conduct for the jurors to seek the bailiff's assistance to have defendant removed from the coffee room prior to commencement of the trial.
Neither does this assignment present a valid due process argument. Defendant's citation of Durr v. Cook, 589 F.2d 891 (5th Cir.1979), is factually inapposite. Therein, the jury foreman conducted certain extraneous experiments concerning how the alleged crime might have occurred and then reported the results to his fellow jurors. The Fifth Circuit held that Durr had presented a substantial claim that his rights may have been violated and held that the foreman must be allowed to testify as to the events in question.
Here, defendant has no proof to support his improper jury conduct allegations. Juror Burge's testimony did not help defendant. Juror McDonald gave only his opinion. We also note that Juror Ruby Johnson specifically denied harboring any ill will or bad feelings toward defendant's wife, notwithstanding defendant's allegations in his motion for new trial that Johnson had demonstrated hostile feelings toward her in the past.
This assignment of error is without merit.
*624 ASSIGNMENT OF ERROR NUMBER 2
"The trial court erred in denying defendant a new trial."
Defendant bases this assignment on five theories:
(1) the verdict was contrary to the law and the evidence because the State failed to prove he was armed with a dangerous weapon, which is an element of the crime of armed robbery;
(2) the lineup procedure was improperly constituted and highly suggestive;
(3) the jurors chosen testified falsely on voir dire when they swore they were unbiased and would accord defendant the presumption of innocence;
(4) during closing arguments, the prosecutor made a statement asking the jurors to judge the case from the victim's perspective; and
(5) he had inadequate counsel.
1. State failed to prove defendant was armed with a dangerous weapon.
The applicable standard of review when a defendant argues that the State failed to prove an element of the crime is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the essential elements of the crime were proved beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Nadine Adams, when shown the shotgun, recognized it as the gun which was pointed at her head during the robbery. She said she recognized it because it was old, had a double barrel with two triggers, and was dark around the handle. Her testimony could fully support a finding that defendant was armed with a dangerous weapon during the robbery.
2. Unduly suggestive lineup procedure.
In determining the constitutionality of an out-of-court identification, several factors must be considered. In State v. Nathan, 444 So.2d 231, 235-236 (La.App. 1st Cir.1983), this court stated:
In determining the constitutionality of an out-of-court identification, several factors must be considered. First, the suggestiveness of the identification procedure must be evaluated. State v. Guillot, 353 So.2d 1005 (La.1977). A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. State v. Robinson, 386 So.2d 1374 (La.1980). In reviewing the procedure, the trial court must look at the totality of the circumstances surrounding the identification. State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).
. . . . .
Even if an identification is suggestive, it will not result in reversal of a conviction if it is demonstrated that the identification was reliable. The factors to be used in determining reliability include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of her prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, supra.
Applying the Manson factors to the facts presented here, Adams testified that defendant had no mask on; that she got a good look at his face while he was standing very close to her holding the shotgun within five inches of her head; and that the robbery took about five minutes. The description Adams gave to Officer Michael Barron, Pontchatoula Police Department, shortly after the occurrence was that defendant was 5'9" tall, weighed 155-165 pounds, had short hair, was wearing a white pullover shirt and jeans, and had a skinny face and a mustache. The description given was so good that Barron remembered an incident which occurred earlier that same night when he had stopped to help a similar-looking man who had run out *625 of gas. It was this description plus this earlier meeting which helped the police apprehend defendant so quickly. Additionally, the lineup confrontation occurred the same day as the robbery. Adams, on cross-examination, never waivered from her identification. She was positive that defendant was the robber and said she remembered his eyes. Applying the Manson factors, we find that both the out-of-court and in-court identifications were reliable.
Our examination of the photograph taken of lineup No. 2 convinces us that there was sufficient resemblance between the physical characteristics and features of the persons in the lineup so that Adams' attention was not focused on defendant. There was some difference in features but no undue suggestion occurred in the lineup.
3. False juror testimony on voir dire.
We have discussed this contention in detail in treating assignment of error number 1.
4. Improper closing argument by the State.
The assistant district attorney made the following observation:
Now, you have to put yourself in the position of these people and if you are the victim of a robbery and someone is holding a gun on you for a period of five minutes, do you not believe that that gun and that that face will indelibly be printed in your mind for many, many, many long times to come.
No objection to this comment was made by defense counsel, and the trial court did not make any admonishments. Closing arguments must be confined to admitted evidence, the lack of evidence and conclusions of fact that may be drawn therefrom, and the law applicable to the case. See La.C. Cr.P. art. 774. The statement made by the State's attorney was made during his argument on Adams' credibility. The point he was making was that if a gun is held on someone for five minutes that the face of the person and the gun will be indelibly marked on the victim's mind. We do not find this statement to be so unduly inflammatory or misleading as to deny defendant a fair trial before an impartial jury. While the statement may have been more artfully phrased, it was not designed to inflame or mislead the jury because Adams testified that defendant held a gun on her for about five minutes and that she was able to identify him and the gun because of the proximity to her and the time interval. Even if we were to consider this as improper argument (which we do not), it is most unlikely that these comments influenced the jury or contributed to its verdict. State v. Carthan, 377 So.2d 308 (La.1979). A resort to personal experience goes beyond the proper scope of argument. See La.C.Cr.P. art. 774. However, before a case will be reversed on the grounds of improper argument, the court must be convinced that the remarks influenced the jury and contributed to the verdict. State v. Barrow, 410 So.2d 1070 (La.1982).
5. Inadequate counsel.
Our careful examination of this entire record shows that defendant was adequately represented at the trial stage. We note that former counsel was interrogated extensively by appellate counsel during the motion for new trial. He answered all questions candidly and completely, and he gave a complete explanation as to all the strategy moves he made during the course of the trial. The right to counsel guaranteed by the U.S. and State constitutions is of course a fundamental right, guaranteeing adequate counsel, not perfect counsel. Hayes v. Maggio, 699 F.2d 198 (5th Cir. 1983); State v. Felde, 422 So.2d 370 (La. 1982). Defendant had adequate counsel.
This assignment of error is without merit as to any of its five theories.
CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
LANIER, J., concurs, disagreeing with the treatment of assignment of error # 1.