HALL, Judge.
Assigning three errors, defendant appeals his convictions by a jury of armed robbery and of attempted manslaughter, after being charged with armed robbery and attempted first degree murder.
Defendant’s assignments contend that a photographic lineup was improperly conducted, that a bullet fragment was unlawfully admitted as' evidence, and that an employee of the regional crime lab was erroneously accepted as a firearms identification expert. We affirm the convictions.

Facts

Shortly after midnight on November 6, 1982, the victim, Melvin Goines, stopped his *112 automobile at a Shreveport intersection. Defendant entered the passenger side of the automobile, placed a gun to Goines’ head, and commanded Goines to drive around the Allendale section of Shreveport.
At defendant’s later demand, Goines surrendered to defendant his car keys and 12 one-dollar bills. Defendant, apparently angered at the small amount of money, ordered Goines to remove his coat and boots. Goines refused because he did not want to be stranded without clothes or car. Defendant then beat Goines with the butt of the gun. When Goines blew the car horn, defendant shot Goines four times, twice in the head, and in the arm and hand. After defendant ran away, Goines staggered to a nearby residence for help. The entire encounter lasted approximately 15 minutes.
Defendant was identified as the assailant by the victim from a photographic lineup and in court. Defendant’s girlfriend testified defendant told her he committed the crime. Fragments of bullets found in the car door and in the hospital where the victim was treated were identified by a firearms expert as having been fired from a pistol found in the defendant’s bedroom.

Assignment of Error No. 1:

Defendant contends that the trial court erred in refusing to suppress the results of a photographic lineup conducted at the hospital where the victim was recovering from his wounds. He argues that Goines’ in-court identification was tainted by the photographic lineup.
The issue is whether the lineup procedure was so unnecessarily suggestive and so conducive to an irreparable mistaken identification that the defendant was denied due process of law. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Neslo, 433 So.2d 73 (La.1983). A lineup is unduly suggestive -if the identification procedure displays the defendant so that the witness’s attention is focused on the defendant. State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Robinson, 386 So.2d 1374 (La.1980).
The photographic lineup was assembled after one of the detectives investigating the case received information that the defendant might be a suspect in the robbery and shooting. The detective went to the hospital where Goines was recovering from his wounds. After ascertaining that Goines was alert, the detective showed Goines the photographs of six people. The lineup photographs are included in the record. The other photographs in the lineup sufficiently resemble the defendant so as to properly test the identification. After observing these photographs for less than one minute, the victim identified Lynn Zell Jones as his attacker.
Goines testified at the preliminary examination and at trial that the detective did nothing to suggest which photograph he should choose. Goines said that he was not told, before his identification of the defendant, that the lineup contained a suspect, and that it was only after he identified defendant that he learned that one of the men in the lineup had reportedly talked about having shot someone on the same night.
Defendant’s claim that the photo identification was suggestive because the detective implied there was a suspect among the photographs is not supported by the record. Assuming arguendo, however, that some factual support for defendant’s claim exists, it has been held that a statement to a victim of a crime that police have a suspect for the victim to view in a lineup does not constitute impermissible suggestiveness because it is generally assumed if one is requested to view a photographic or physical lineup there is a suspect in the lineup. State v. Wright, 410 So.2d 1092 (La.1982); State v. Stewart, 389 So.2d 1321 (La.1980); State v. White, 446 So.2d 1317 (La.App.2d Cir.1984), writ denied 450 So.2d 957 (La.1984).
The likelihood of misidentification is the basis for finding that a defendant’s due process rights have been violated. State v. Guillot, 353 So.2d 1005 (La.1977); Manson v. Brathwaite, supra. Reliability of identification is tested by five factors set forth in *113 Neil v. Diggers, 409 U.S. 188, 92 S.Ct. 375, 34 L.Ed.2d 401 (1972). These factors were reiterated in Manson, supra, and by the Louisiana Supreme Court in Guillot, supra. Application of these factors to this record reveals:
(1) The opportunity to view:
The victim and defendant were in the front seat of a car for approximately 15 minutes. Goines testified that the street lights made it light enough for him to clearly see defendant’s face even though it was nighttime.
(2) The degree of attention:
The victim testified that defendant at one point during the robbery told him to “get a good look at him.” Goines said he used the opportunity to study defendant’s face.
(3) The accuracy of the description:
Immediately after the crime, when Goines was being treated in the hospital emergency room, he told the detective that he remembered his assailant. Goines accurately described his assailant as a young black man in his early 20s, of thin to medium build, and weighing 170 to 180 pounds. Goines told the officer that the man had a goatee, an Afro hairstyle, and, had worn a knee-length green military overcoat. Goines also observed that his assailant had a gold upper tooth.
(4) The witness’s level of certainty:
The victim and the detective who presented the photographic lineup testified that Goines took less than one minute to identify defendant’s photograph. The victim testified that he could not forget his assailant’s face and was certain of his identification even though the defendant had changed his hairstyle and shaved his goatee since the crime.
(5) The time between the crime and the confrontation:
Goines was shown the photographic lineup two days after the robbery.
Under these circumstances, it is evident that even if the identification procedure had been suggestive there was no significant chance of misidentification. The trial court did not err in refusing to suppress the photographic lineup.
Further, the in-court identification by the victim under the totality of the circumstances was well supported by independent sources. No violation of defendant’s due process rights occurred. State v. Gipson, 359 So.2d 87 (La.1978); State v. Guillot, supra; State v. Clark, 437 So.2d 879 (La.App.2d Cir.1983).

Assignment of Error No. 2:

The bullet fragment of which defendant complains was recovered from the floor of the LSU Medical Center X-ray room where the victim was taken for treatment.
To admit demonstrative evidence at trial, the law requires that the object be identified. State v. Smith, 430 So.2d 31 (La.1983); State v. Moore, 419 So.2d 963 (La.1982). This identification can be visual or established by testimony that the object sought to be introduced into evidence is related to the case. State v. Robertson, 358 So.2d 931 (La.1978); State v. King, 355 So.2d 1305 (La.1978). A sufficient foundation has been laid for the admission of demonstrative evidence if it is established that it is more probable than not that the object is connected with the case. State v. Sharp, 414 So.2d 752 (La.1982); State v. Davis, 411 So.2d 434 (La.1982). Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimate connexity is a factual matter for determination by the jury. State v. Robertson, supra.
Detective Wilson testified that upon receiving the call about the robbery and shooting, he went directly to the LSU Medical Center emergency room where the victim was being treated. The detective accompanied the victim, who was awake and alert, from the emergency room to the X-ray room. While there, the detective stepped on a hard object in a clump of hair that was under the victim’s gurney. Upon closer inspection by the detective, the hard object was revealed to be a bullet frag *114 ment. The detective testified that the victim’s hair had been clipped in the emergency room and that the hair on the table, as well as the hair on the floor was similar to the hair on the head of the victim. The detective placed the bullet fragment in a vial which he labeled and signed. He later took the bullet fragment in this container to the North Louisiana Crime Lab. This evidence establishes a sufficient foundation for the admission of the bullet fragment. Ultimate connexity of the bullet with the crime was a matter for the jury’s determination.

Assignment of Error No. 3:

The defendant challenges the trial court’s acceptance of Stephen McKinney as an expert in the field of firearms identification.
The competence of an expert witness is a question of fact within the sound discretion of the trial judge. LSA-R.S. 15:466; State v. White, 430 So.2d 174 (La.App.2d Cir.1983). The trial court’s ruling on the qualification of experts will not be disturbed unless clearly wrong. State v. Coleman, 406 So.2d 563 (La.1981).
The record indicates that McKinney received his BS degree in zoology and MA in organic chemistry from Louisiana Tech University. He had worked and trained for approximately two years in firearm identification at the North Louisiana Crime Lab. Additionally, McKinney had attended a seminar of the Louisiana Association of Forensic Scientists and had studied journals of the Association of Firearms and Tool Marks Examiners. The trial judge did not abuse his discretion by accepting McKinney as an expert in firearms identification.

Decree

Other assignments of error made by appellate counsel, but not briefed, are considered abandoned. State v. Williams, 338 So.2d 672 (La.1976).
Defendant’s convictions are affirmed.
Affirmed.