608 So.2d 664 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Tyrone McKinley HENSLEY, Defendant-Appellant.
No. Cr 92-20.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
Writ Denied February 19, 1993.
*665 Larry C. Dupuis, Crowley, for defendant-appellant.
Glennon Everett, Asst. Dist. Atty., Crowley, for plaintiff-appellee.
Before STOKER and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
After a jury trial, defendant, Tyrone M. Hensley, was found guilty by a unanimous verdict of two counts of armed robbery, violations of LSA-R.S. 14:64. The sentencing court imposed consecutive twenty-five year sentences at hard labor, without benefit of parole, probation, or suspension of sentence, on each count. Defendant appeals his convictions, relying on four assignments of error. We affirm.

*666 FACTS
En route to their home in Arizona, the victims, Leonard and Lois Fryer, 71 and 70 years of age, respectively, stopped their motor home during the early afternoon hours at a rest area westbound on I-10 in Acadia Parish. After Mr. Fryer left the vehicle, defendant, a black male, entered the motor home and waited until Mrs. Fryer exited the bathroom. As Mrs. Fryer exited, defendant grabbed her from behind, held a knife to her throat, and demanded money. Confronted with defendant's repeated threats to kill her, Mrs. Fryer gave defendant the money she had in her purse, as well as money she had at another location in the motor home. Meanwhile, a white female, later identified as defendant's girl friend, entered the motor home. Moments later, Mr. Fryer returned, finding defendant holding Mrs. Fryer at knife point. Defendant, threatening to kill Mrs. Fryer, ordered Mr. Fryer to hand over his wallet. After Mr. Fryer complied with defendant's demand, defendant ordered his girl friend to exit the motor home, and start their car which was parked nearby. Defendant then threw Mrs. Fryer aside, and fled the scene with his accomplice.
Mr. Fryer wrote down the number of the temporary license plate on the fleeing vehicle. He then telephoned the police from the rest area to report the robbery, giving them the description of a black male accompanied by a white female, driving west on I-10 in a red Chevrolet, bearing temporary license number P-9145.
Within minutes, deputies of the Jefferson Davis Parish Sheriff's Office spotted the described vehicle at a Charter Store a few miles west of where the robbery occurred. Lieutenant Mike Conner observed the suspects leaving the store and saw them enter the red Chevrolet. At this time, Lieutenant Conner parked his vehicle directly behind the Chevrolet, radioed the temporary license plate number into the Sheriff's Office, and then approached the stopped vehicle. The driver, identified by Lieutenant Conner as defendant, was unable to produce identification. Lt. Conner then proceeded to the passenger side of the vehicle where a white female was seated. In plain view on the car seat between the driver and his passenger was a folded knife. Lt. Conner returned to the driver's side of the vehicle, removed the keys from the ignition and took the knife from the vehicle. As he and an assisting detective walked to their police vehicles to report their findings, defendant bolted from his automobile and fled the scene. Although Lt. Conner's initial attempt to chase defendant was futile, officers of the Jennings City Police found defendant shortly after, hiding underneath a house. At the time of defendant's arrest, a large amount of crumpled United States currency fell out of his shirt pocket, and was confiscated by the arresting officers. In addition, the police recovered Mr. Fryer's wallet and other identification from the trash can in the men's room in the Charter store.

VOIR DIRE: PURPOSEFUL DISCRIMINATION
Defendant contends that the trial court erred in allowing the State to peremptorily challenge Wilda Robinson, a black female. He argues that the State used the peremptory challenge to remove a juror from the petit jury based solely on race, in violation of the equal protection clauses of the United States and Louisiana Constitutions and LSA-C.Cr.P. Art. 795(C).
In State v. Collier, 553 So.2d 815, 818-819 (La.1989), our Supreme Court stated:
"Under Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ] the defendant, after timely objection, must demonstrate a prima facie case of purposeful discrimination. To do so, the defendant must establish that he is a member of a cognizable racial group, that the prosecutor has exercised his peremptory challenges to remove other members of that race from the jury, and that these facts, along with the other relevant circumstances, raise an inference that the prosecutor used his peremptory challenges to exclude the veniremen from the jury on account of their race. Id. at 96, 106 S.Ct. at 1722.

*667 The trial judge must determine whether the defendant has established the requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. Id. at 96-97, 106 S.Ct. at 1722-1723." (Footnote omitted.)
After carefully reviewing the record before us, we do not find that the defendant established a prima facie case of purposeful discrimination. The record shows that Wilda Robinson was the first prospective juror peremptorily challenged by the State. The record fails to reflect how many members of the jury venire were black or the racial makeup of the empaneled jury. Accordingly, we conclude that, on the record before us, we are unable to evaluate defendant's contention that the State used a discriminatory mind to exclude veniremen on the basis of race.
However, assuming arguendo that defendant established a prima facie case of purposeful discrimination, we find that the State gave racially neutral reasons for its challenge of Mrs. Robinson. In explanation of its challenge of Mrs. Robinson, the State pointed out to the trial court that her answers to questions during voir dire were not accurate. When the trial court initially asked the prospective jury venire if any member of their families had ever been convicted of a crime, Mrs. Robinson remained silent; during further questioning later in voir dire examination, it was discovered that Mrs. Robinson's son had been convicted of distribution of cocaine in the same judicial district in which defendant was undergoing trial for the present offense. Accordingly, the State argued that Mrs. Robinson may not have been totally candid with the court and, thus, should be excluded. On this basis, the trial court determined that the State satisfactorily presented racially neutral grounds on which to base its peremptory challenge. The State's racially neutral explanations do not have to meet higher criteria than for a challenge for cause; it need only be clear, reasonably specific, legitimate and related to the particular case at bar. State v. Collier, supra. We find that the State's explanations for its peremptory challenge of Mrs. Robinson were not for purposes of racial discrimination.
For the foregoing reasons, we find that defendant's assignment of error lacks merit.

PHOTOCOPIES OF STOLEN MONEY
Defendant next contends that the trial court erred in allowing the State to introduce photocopies of the alleged stolen money in lieu of the actual currency. He argues that the actual money rather than photocopies constitutes the best evidence. We disagree.
Initially, we note that with the advent of Louisiana's Code of Evidence, there is no longer a broad principle mandating that only the "best" available evidence is admissible. "Other evidence is not made inadmissible, provided it meets the test embodied in Article 403 and the other exclusionary rules of this Code." Introductory Note to Chapter 10, Louisiana Code of Evidence.
In the case sub judice, we find that defendant has not shown that he was prejudiced by the admission of the photocopies into evidence. The fact at issue, i.e. that defendant took something of value from the Fryers, was proven by their testimony without the evidence defendant claims is inadmissible. The Fryers testified that they turned over money to defendant when faced with the threat of physical violence. Furthermore, Officer Danny Wimberly of the Acadia Parish Sheriff's Office stated that he recovered a large sum of currency from defendant when it fell out defendant's pocket during arrest. Officer Wimberly further testified that he photocopied the money and returned it to the Fryers so that they could return to Arizona without having to telephone relatives for travel money. Absent a showing of some prejudice to the defendant, the "best evidence rule", even if it were currently viable, will not be applied *668 unreasonably. State v. Simpson, 464 So.2d 1104 (La.App. 3rd Cir.1985).
Moreover, where a mechanical reproduction of the original is offered into evidence, and is thus the substantial equivalent of the original, admission over objection is reversible error only upon a showing that the content of the purported copy does not accurately reflect that of the original. State v. Vincent, 338 So.2d 1376 (La.1976).
In the case sub judice, defendant has not alleged that the photostatic reproduction of the currency is not an accurate duplication of the currency which fell from defendant's pocket just after his armed robbery of the Fryers.
For the foregoing reasons, we find that defendant's assignment of error lacks merit.

CHAIN OF CUSTODY
Defendant contends that the trial court erred in allowing the introduction of a knife into evidence which was neither marked nor labeled by an officer or public official at the time it was confiscated.
In State v. Jones, 587 So.2d 787, 794 (La.App. 3rd Cir.1991), writ denied, 590 So.2d 78 (La.1991), we stated:
"Evidence is admissible at trial if properly identified. Physical evidence is admissible if the chain of custody is established from the time of seizure to the time it is offered in evidence. The law does not require that the evidence relating to chain of custody eliminate all possibilities regarding identification. It suffices if the evidence establishes that it is more probable than not that the object offered in evidence is the one connected with the case. A preponderance of the evidence is sufficient. A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact."
The record in the present case more than sufficiently establishes the chain of custody of the knife. Deputy Conner testified that he recovered the knife from the front seat of the defendant's automobile when he first questioned defendant and his girl friend. He stated that he surrendered the knife to Detective Kevin Baudoin who, in turn, gave the knife to Sergeant Danny Wimberly of the Acadia Parish Sheriff's Office. The knife was then given to Detective Charles LaFosse who surrendered it to Tamara Hanley, the evidence officer of the Acadia Parish Sheriff's Office. Officer Hanley testified that she received the knife from Detective LaFosse, that she sealed the knife in an evidence bag and stored it in the locked evidence room until the day of trial. Mrs. Fryer testified that she recognized the knife blade and that it was similar to the one used in the armed robbery. Mr. Fryer stated that he also recognized the knife admitted into evidence as one which was similar in length to the knife defendant held at his wife's throat.
In light of the trial testimony, we cannot say that the trial court erred in admitting the knife into evidence.
For the foregoing reasons, we find that defendant's assignment of error lacks merit.

MOTION FOR MISTRIAL
Defendant contends that the trial court erred in denying his motion for mistrial based on the State's use of an impermissibly suggestive identification procedure. Defendant argues that the State's presentation of a single picture of defendant to Mr. Fryer just prior to trial was both suggestive and conducive to irreparable mistaken identity.
As a backdrop to the discussion of this assignment, the following facts are necessary. Although defendant and his accomplice were apprehended shortly after the robberies, neither Mr. nor Mrs. Fryer were asked to identify defendant as one of the perpetrators before they returned to their home in Arizona. On the day before trial, the State showed Mr. Fryer one photograph and then questioned him about whether the person depicted in the photograph was the person who robbed him and his wife. This photographic identification *669 procedure is the basis of defendant's assignment of error.
Due process prohibits the conducting of an identification procedure in a manner which is unnecessarily suggestive and conducive to irreparable mistaken identity. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In testing the constitutionality of an out-of-court identification, the suggestiveness of the identification procedure itself must be first examined. State v. Guillot, 353 So.2d 1005 (La. 1977). The display of a single photograph of defendant rather than an array of photographs depicting different individuals has repeatedly been held to be improper. State v. McLeland, 456 So.2d 633 (La.App. 2nd Cir.1984), writ denied, 461 So.2d 312 (La. 1984).
Although an identification procedure is impermissibly suggestive, this alone does not indicate a violation of due process rights. The impermissibly suggestive identification procedure must create the likelihood of misidentification. Exclusion of the in-court identification is not required unless the out-of-court identification created a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Reliability of an identification is tested by examining each of five factors set forth in Neil v. Biggers, supra. As adopted by the Louisiana Supreme Court in State v. Guillot, supra, these factors are: (1) the victim's opportunity to view the defendant; (2) the degree of attention; (3) the accuracy of the description; (4) the witnesses's level of certainty; and, (5) the time between the crime and the confrontation.
In the case sub judice, Mr. Fryer had between five and ten minutes on the day of the robberies to view the defendant from a distance of approximately five feet. In State v. Harris, 510 So.2d 439 (La.App. 1st Cir.1987), writ denied, 516 So.2d 129 (La. 1987), the appellate court found that a three to five minute conversation afforded the victim ample opportunity to view the robber. Significantly in the case at hand, Mr. Fryer's attention was not merely that of a casual observer; rather, he viewed defendant as defendant threatened his wife and held a knife to her throat. Accordingly, Mr. Fryer's attention was extremely focused on defendant.
Furthermore, as defendant and his accomplice fled the I-10 rest area, Mr. Fryer immediately provided a detailed description of defendant, his accomplice, their escape vehicle, and the direction of their travel. On the strength of Mr. Fryer's detailed description, Detectives Conner and Baudoin were able to locate defendant within miles of the robberies, and found specific items of evidence, credit cards, money, the knife, and Mr. Fryer's wallet, which linked defendant to the crimes.
In his testimony at trial, Mr. Fryer indicated that he had no question that defendant was the person who robbed him and his wife. He further testified that the reason he reviewed the photograph on the day before trial was to determine what changes defendant made in his appearance since the robberies. Mr. Fryer steadfastly maintained that the photograph did not help him identify defendant. Furthermore, Mr. Fryer stated that regardless of the photograph, he was positive that defendant robbed him and his wife.
Lastly, we find that the short lapse of time between the commission of the crimes and the trial confrontation strengthens the reliability of Mr. Fryer's identification of defendant. In the present case, the robberies took place on January 30, 1991, and the trial began only five and one-half months later on July 17, 1991. In Hudson v. Blackburn, 601 F.2d 785 (5th Cir.1979), cert. denied, 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 772 (1980), a lapse of six months was not considered a seriously negative factor in light of the "... other indicia of reliability [which] persuades the court that no mistake was made in this case."
Considering all of the factors enunciated in State v. Guillot, supra, there is ample evidence to negate defendant's allegation that Mr. Fryer misidentified him as the perpetrator of the two robberies.
*670 For the foregoing reasons, we find that defendant's assignment of error lacks merit.

DECREE
For the foregoing reasons, defendant's convictions are affirmed.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.